IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                               )
LOCKHEED MARTIN CORPORATION,                   )
                                               )
        Plaintiff,                             )          Case No. 06-01438-RJL
                                               )
        v.                                     )
                                               )
UNITED STATES OF AMERICA,                      )
                                               )
        Defendant.                             )
_____)


**THE UNITED STATES' MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS**

SUE ELLEN WOOLDRIDGE
ASSISTANT ATTORNEY GENERAL

EILEEN T. MCDONOUGH
Environmental Defense Section
United States Department of Justice
Post Office Box 23986
Washington, D.C.  20026-3986
telephone: (202) 514-3126
telefax: (202) 514-8865
eileen.mcdonough@usdoj.gov

November 6, 2006

# TABLE OF CONTENTS

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    STATUTORY BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   FACTUAL ALLEGATIONS IN COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . 6

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.    PLAINTIFFS ARE PRPS AND CANNOT INVOKE ANY OF THE
      ENUMERATED DEFENSES UNDER CERCLA . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.   AS PRPS, PLAINTIFFS' CLAIM TO RECOVER RESPONSE COSTS UNDER
      CERCLA SECTION 107(a) IS CONTRARY TO LAW . . . . . . . . . . . . . . . . . . . . 9

      A.    The Weight of Judicial Authority Requires Dismissal . . . . . . . . . . . . . . . . . 9

            1.    Most of the courts of appeals would dismiss the action . . . . . . . . . . . . 9

            2.    Two appellate courts would allow the claim to proceed . . . . . . . . . . . 11

            3.    This Court's decisions have been inconsistent . . . . . . . . . . . . . . . . . . . 12

      B.    The Plain Language of Section 107(a) Does Not Allow a
            Claim by PRPs Against Another PRP . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      C.    Consideration of Section 107(a) Together With Section 113(f) Further
            Demonstrates That Section 107(a) Does Not Provide A Claim For A PRP . . . . 16

            1.    A historical review of how contribution claims arose under CERCLA
                  and the relationship between CERCLA sections 107(a) and 113(f)
                  illustrates why section 107(a) cannot be construed as affording an
                  independent right of recovery to a PRP . . . . . . . . . . . . . . . . . . . . . . . . 16

            2.    Section 113(f) is the exclusive mechanism for recovery by a PRP
                  against other PRPs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

            3.    The contrary decisions by the Second and Eighth Circuits misread
                  Aviall and fail to recognize that any claim by a PRP is essentially a
                  claim for contribution, regardless of how it is pled . . . . . . . . . . . . . . . 21

i

D.    CERCLA's Savings Clause Does Not Support the Argument that A
PRP Can Assert A Claim Against Another PRP Under Section 107(a) . . . . . . . 24

E.    The Legislative History Does Not Support the Argument that A PRP
Can Assert A Claim Against Another PRP Under Section 107(a) . . . . . . . . . . 25

F.    Policy Concerns Do Not Warrant Allowing A PRP to Assert A Claim
Under Section 107(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

1.    Allowing PRPs to assert a claim under section 107(a) would
damage CERCLA enforcement and undermine the Congressional
policy favoring early settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

2.    Considerations unique to claims against the United States should
not be considered in construing a statute that also applies to private
parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

III.   PLAINTIFFS CANNOT ASSERT AN IMPLIED CONTRIBUTION CLAIM
UNDER CERCLA SECTION 107(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

IV.   PLAINTIFFS FAIL TO ESTABLISH JURISDICTION FOR THE CLAIM
UNDER THE DECLARATORY JUDGMENT ACT . . . . . . . . . . . . . . . . . . . . . . . . . 38

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

# TABLE OF AUTHORITIES

## CASES

Aetna Life Ins. Co. v. Haworth, 300 U.S. 227 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Akzo Coatings, Inc. v. Aigner Corp., 30 F.3d 761 (7th Cir. 1994) . . . . . . . . . . . . . . . . . 4, 10, 20

Alexander v. Sandoval, 532 U.S. 275 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 37

AMCAL Multi-Housing, Inc. v. Pacific Clay Prods., No. EDCV-06-280-SGL, 2006 WL
3016326 (C.D. Cal. Oct. 10, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Amoco Oil Co. v. Borden, Inc., 889 F.2d 664 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . 11, 22

AT&T Co. v. Central Office Tel., Inc., 524 U.S. 214 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Atherton v. FDIC, 519 U.S. 213 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Atlantic Research Corp. v. United States ("ARC"),
  459 F.3d 827 (8th Cir. 2006), petition for cert. filed, __ U.S.L.W. __,
  (U.S. Oct. 24, 2006) (No. 06-562) . . . . . . . . . . . . . . . . . . . . . . 5, 12, 15, 17, 21 ,23, 29, 32, 34

Aviall Servs., Inc. v. Cooper Indus., LLC, No. 3:97-CV-1926-D,
  2006 WL 2263305 (N.D. Tex. Aug. 8, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Bedford Affiliates v. Sills, 156 F.3d 416 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . 11, 20, 21, 23, 32

Benvenuti v. Dep't of Defense, 587 F. Supp. 348 (D.D.C. 1984) . . . . . . . . . . . . . . . . . . . . . . . . 38

Boarhead Farm Agreement v. Advanced Envtl. Tech. Corp.,
  381 F. Supp. 2d 427 (E.D. Pa. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.,
  153 F.3d 344 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9, 22

Cicippio-Puleo v. Islamic Republic of Iran, 353 F.3d 1024 (D.C. Cir. 2004) . . . . . . . . . . . . . . 7

City of Bangor v. Citizens Comm'ns Co., 437 F. Supp. 2d 180 (D. Me. 2006) . . . . . . . . . . . . 13

City of Rialto v. Dep't of Defense, No. EDCV 04-00759, 2005 U.S. Dist. LEXIS 26941
   (C.D. Cal. Aug. 16, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

City of Waukesha v. Viacom Int'l, Inc., 362 F. Supp. 2d 1025 (E.D. Wis. 2005) . . . . . . . . . . . 13

Coeur D'Alene Tribe v. Asarco Inc., 280 F. Supp. 2d 1094 (D. Idaho 2003) . . . . . . . . . . . . . . 33

Colorado v. ASARCO, Inc., 608 F. Supp. 1484 (D. Colo. 1985) . . . . . . . . . . . . . . . . . . . . . . . . 16

Consolidated Edison Co. v. UGI Utils., Inc., 423 F.3d 90 (2d Cir. 2005),
   petition for cert. filed, 74 U.S.L.W. 3600 (U.S. April 14, 2006) . . . 5, 11, 12, 15, 16, 21, 23, 29

Cooper Indus,. Inc. v. Aviall Servs., Inc., 543 U.S. 157 (2004) ("Aviall") . . . . . . . . . . . . passim

Correctional Servs. Corp. v. Malesko, 534 U.S. 61 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

County Line Inv. Co. v. Tinney, 933 F.2d 1508 (10th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . 18

Cummings v. Dep't of the Navy, 279 F.3d 1051 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 7

Dico,. Inc. v. Amoco Oil Co., 340 F.3d 525 (8th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

E.I. DuPont De Nemours and Co. v. United States,
   460 F.3d 515 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9,16, 18, 20, 24-27, 30

Elementis Chromium L.P. v. Coastal States Petroleum Co., 450 F.3d 607 (5th Cir. 2006) . . . . 11

East Bay Mun. Utility Dist. v. United States Dep't of Commerce,
   142 F.3d 479 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 33

Ferguson v. Arcata Redwood Co. LLC, No. C 03-05632 SI, 2005 WL 1869445
   (N.D. Cal. Aug. 2, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Field v. Mans, 516 U.S. 59 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Foster v. United States, 130 F. Supp. 2d 68 (D.D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Foster v. United States, 922 F. Supp. 642 (D.D.C. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Gonzaga Univ. v. Doe, 536 U.S. 273 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Hohn v. United States, 524 U.S. 236 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Hercules Inc. v. United States, Civil Action No. 1:03CV01475 (RWR)

iv

(D.D.C., filed July 3, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

In re Dant & Russell, Inc., 951 F.2d 246 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

In re Reading Co., 115 F.3d 1111 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 17, 20, 22

Jama v. Immigration and Customs Enforcement, 543 U.S. 335 (2005) . . . . . . . . . . . . . . . . . . . 14

Key Tronic Corp. v. United States, 511 U.S. 809 (1994) . . . . . . . . . . . . . . . . . . . . . . 2, 14, 16, 34

King v. St. Vincent's Hosp., 502 U.S. 215 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 38

Koutrous v. Goss-Jewett Co., No. Civ. S02-1520 FCD JFM, 2005 WL 1417152
   (E.D. Cal. June 16, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Lane v. Pena, 518 U.S. 187 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 38

League of Wilderness Defenders v. Forsgren, 309 F.3d 1181 (9th Cir. 2002) . . . . . . . . . . . . . . 14

Lexecon Inc. v. Milberg Weis Bershad Hynes & Lerach, 523 U.S. 26 (1998) . . . . . . . . . . . . . . 18

Library of Congress v. Shaw, 478 U.S. 310 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Meghrig v. KFC Western, Inc., 516 U.S. 479 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Mercury Mall Assocs., Inc. v. Nick's Mkt., Inc., 368 F. Supp. 2d 513 (E.D. Va. 2005) . . . . . . 13

Metropolitan Water Reclamation District of Greater Chicago v. Lake River Corp.,
   365 F. Supp. 2d 913 (N.D. Ill. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1 (1981) . . . . . 36

Mobil Oil Corp. v. Higginbotham, 436 U.S. 618 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Montville Township v. Woodmont Builders, LLC, No. Civ. A. 03-280 DRD,
   2005 WL 2000204 (D.N.J. Aug. 17, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

New Castle County v. Halliburton, 111 F.3d 1116 (3d Cir. 1997) . . . . . . . . 10, 15, 17, 20, 21, 22

Northwest Airlines, Inc. v. Transport Workers Union, 451 U.S. 77 (1981) . . . . . . . . . . 17, 35, 36

NRDC v. EPA, 822 F.2d 104 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Pennsylvania v. Union Gas Co., 491 U.S. 1 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Pinal Creek Group v. Newmont Mining Corp.,
    118 F.3d 1298 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9, 18, 20, 22, 23

Pneumo Abex Corp. v. High Point, Thomasville & Denton R.R.,
    142 F.3d 769 (4th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10

Porto Rico Ry., Light & Power Co. v. Mor, 253 U.S. 345 (1920) . . . . . . . . . . . . . . . . . . . . . . . 14

R.E. Goodson Constr. Co. v. International Paper Co., No. C/A 4:02-4184-RBH, 2005 WL
    2614927 (D.S.C. Oct. 13, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Raytheon Aircraft Co. v. United States, 435 F. Supp. 2d 1136 (D. Kan. 2006) . . . . . . . . . . . . 13

Redwing Carriers, Inc. v. Saraland Apartments, 94 F.3d 1489 (11th Cir. 1996) . . . . . . . 4, 9, 11

Ridenour v. Andrews Federal Credit Union, 897 F.2d 715 (4th Cir. 1990) . . . . . . . . . . . . . . . 37

Rumpke, Inc. v. Cummins Engine Co., 107 F.3d 1235 (7th Cir. 1997) . . . . . . . . . . . . . . . . . 4, 10

Schilling v. Rogers, 363 U.S. 666 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Shendock v. Director, OWCP, 893 F.2d 1458 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 14

Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667 (1950) . . . . . . . . . . . . . . . . . . . . . . . . 38

Sunnyside Dev. Corp. LLC v. Opsys U.S. Corp., No. C 05-01447 SI,
    2006 WL 1128039 (N.D. Cal. April 27, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630 (1981) . . . . . . . . . . . . 17, 35, 36

Town of New Windsor v. Tesa Tuck, Inc., 919 F. Supp. 662 (S.D.N.Y. 1996) . . . . . . . . . 23, 32

Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11 (1979) . . . . . . . . . . . . . . . . . . . 36

United States Dep't of Energy v. Ohio, 503 U.S. 607 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 33

United States v. Akzo Coatings of America, Inc., 949 F.2d 1409 (6th Cir. 1991) . . . . . . . . . . 30

United States v. Bestfoods, 524 U.S. 51 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

United States v. Cannons Eng'g Corp., 899 F.2d 79 (1st Cir 1990) . . . . . . . . . . . . . . . . . . . . . 30

vi

United States v. Charter Int'l Oil Co., 83 F.3d 510 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . 30

United States v. Chrysler Corp., 157 F. Supp. 2d 849 (N.D. Ohio 2001) . . . . . . . . . . . . . . . 29

United States v. Colorado & E. R.R., 50 F.3d 1530 (10th Cir. 1995) . . . . . . 4, 10, 17, 20, 21, 22

United States v. Fausto, 484 U.S. 439 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States v. Hooker Chems. & Plastics Corp., 850 F. Supp. 993 (W.D.N.Y. 1994) . . . . . . 33

United States v. Kramer, 757 F. Supp. 397 (D.N.J. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

United States v. Mitchell, 463 U.S. 206 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Monsanto Co., 858 F.2d 160 (4th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . 29

United States v. New Castle County, 642 F. Supp. 1258 (D. Del. 1986) . . . . . . . . . . . . . . . . . 16

United States v. Pritchett, 470 F.2d 455 (D.C. Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Shell Oil Co., 294 F.3d 105 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 33

United States v. Vertac Chem. Corp., 46 F.3d 803 (8th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . 33

United Techs. Corp. v. Browning-Ferris Indus.,
   33 F.3d 96 (1st Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10, 17, 20-22, 35

Viacom, Inc. v. United States, 404 F. Supp. 2d 3 (D.D.C. 2005) . . . . . . . . . 13, 16, 21, 29, 32, 34

Vine Street LLC v. Keeling, 362 F. Supp. 2d 754 (E.D. Tex. 2005) . . . . . . . . . . . . . . . . . . . . . 13

Wehner v. Syntex Agribusiness, Inc., 616 F. Supp. 27 (E.D. Mo. 1985) . . . . . . . . . . . . . . . . . 16

Wickland Oil Terminals v. Asarco, Inc., 792 F.2d 887 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . 15

## STATUTES

Comprehensive Environmental Response, Compensation, and Liability Act
   ("CERCLA"), 42 U.S.C. §§ 9601-9675:

Section 101(9), 42 U.S.C. § 9601(9), (14), (20)-(22), (26), (29) . . . . . . . . . . . . . . . . . . . . . . . . 3

Section 104, 42 U.S.C. § 9604 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Section 106, 42 U.S.C. § 9606 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Section 107, 42 U.S.C. § 9607 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Section 107(a), 42 U.S.C. § 9607(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

Section 107(a)(1),  42 U.S.C. § 9607(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Section 107(a)(1)-(4), 42 U.S.C. § 9607(a)(1)-(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Section 107(a)(1-4)(A), 42 U.S.C. 9607(a)(1-4)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Section 107(a)(1-4)(B), 42 U.S.C. 9607(a)(1-4)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Section 107(a)(2), 42 U.S.C. § 9607(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Section 107(a)(4)(A), 42 U.S.C. § 9607(a)(4)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Section 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 12

Section 107(b), 42 U.S.C. § 9607(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6

Section 107(n), 42 U.S.C. § 9607(n) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Section 107(q), 42 U.S.C. § 9607(q) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Section 107(r), 42 U.S.C. § 9607(r) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Section 113, 42 U.S.C. § 9613 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Section 113(f), 42 U.S.C. § 9613(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Section 113(f)(1), 42 U.S.C. 9613(f)(1)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 17, 18, 19, 34

Section 113(f)(2), 42 U.S.C. 9613(f)(2)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 19

Section 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B) . . . . . . . . . . . . . . . . . . . . . . . . 5, 17, 19, 34

Section 113(g)(2), 42 U.S.C. § 9613(g)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 19

Section 113(g)(3), 42 U.S.C. § 9613(g)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Section 120(a), 42 U.S.C. § 9620(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Section 120(a)(1), 42 U.S.C. § 9620(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Section 120(a)(4), 42 U.S.C. § 9620(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Section 120(e), 42 U.S.C. § 9620(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Section 122, 42 U.S.C. § 9622 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 38

Department of Defense Environmental Restoration Program, 10 U.S.C. §§ 2701-2710 . . . . . . 34

Superfund Amendments and Reauthorization Act ("SARA"), Pub. L. No. 99-499,
  100 Stat. 1613 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**FEDERAL REGISTER**

50 Fed. Reg. 5034 (Feb. 5, 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

**RULES**

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**LEGISLATIVE HISTORY**

H.R. Rep. No. 99-253, pt. 1 (1985), <u>reprinted in</u> 1986 U.S.C.C.A.N. 2835, 2861 . . . . . . . . 26, 28

H.R. Rep. No. 99-253, pt. 5 (1986), <u>reprinted in</u> 1986 U.S.C.C.A.N. 3124, 3181 . . . . . . . . . . 28

S. Rep. No. 99-11 (1985), <u>reprinted in</u> 2 <u>A Legislative History of the Superfund
  Amendments & Reauthorization Act of 1986</u> (Comm. Print 1990) . . . . . . . . . . . . . . . . . . 27, 28

**MISCELLANEOUS**

Black's Law Dictionary (5th ed. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
LOCKHEED MARTIN CORPORATION,            )
                                        )
        Plaintiff,                      )          Case No. 06-01438-RJL
                                        )
        v.                              )
                                        )
UNITED STATES OF AMERICA,               )
                                        )
        Defendant.                      )
_____)

**THE UNITED STATES' MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS**

Plaintiffs Lockheed Martin Corporation and Unisys Corporation filed this action pursuant

to section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability

Act ("CERCLA"), 42 U.S.C. § 9607(a), to recover all or part of response costs they incurred in

remediating contamination at a facility in Great Neck, New York ("Great Neck Site").  Plaintiffs

also request a declaratory judgment pursuant to CERCLA section 113(g)(2), 42 U.S.C.

§ 9613(g)(2), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, establishing that the

United States is liable for response costs to be incurred at the Site in the future.  Plaintiffs allege

that the contamination was caused by the disposal of hazardous substances at the facility during

the production of military equipment for the United States.

Plaintiffs' CERCLA claims must be dismissed for failing to state a claim upon which

relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  Because Plaintiffs are potentially

responsible parties ("PRPs"), CERCLA section 107(a) does not provide an independent statutory

basis for them to recover their response costs.  Plaintiffs' claim for relief under the Declaratory

Judgment Act should be dismissed for lack of subject-matter jurisdiction.  The Act does not

expand the jurisdiction of the federal district courts, but only provides an additional remedy.

Because Plaintiffs have failed to establish a jurisdictional basis for this claim, it should be

dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

**BACKGROUND**

I.      **STATUTORY BACKGROUND**

Congress enacted CERCLA (also generally known as "Superfund") in 1980 in response

to the serious environmental and health dangers posed by property contaminated by hazardous

substances.  United States v. Bestfoods, 524 U.S. 51, 55 (1998).  CERCLA, as amended in 1986

by the Superfund Amendments and Reauthorization Act ("SARA"), Pub. L. No. 99-499, 100

Stat. 1613, "grants the President broad power to command government agencies and private

parties to clean up hazardous waste sites."  Key Tronic Corp. v. United States, 511 U.S. 809, 814

(1994).  It "both provides a mechanism for cleaning up hazardous waste sites, . . . and imposes

the costs of the cleanup on those responsible for the contamination."  Pennsylvania v. Union Gas

Co., 491 U.S. 1, 7 (1989).

CERCLA provides the President (acting primarily through the United States

Environmental Protection Agency ("EPA")) with alternative means for cleaning up contaminated

property.  EPA itself can undertake response actions to address hazardous substances, see 42

U.S.C. § 9604, or EPA can compel responsible parties (through an administrative order or a

request for judicial relief) to undertake response actions, which EPA then monitors, see 42

U.S.C. § 9606.  Under either approach, the United States may recover the costs associated with

the response action ("response costs") through an action under section 107(a), 42 U.S.C.

§ 9607(a).

2

CERCLA section 107(a)(4)(A) authorizes the United States, as well as certain other entities and persons, to seek recovery of appropriate response costs through a suit against four categories of "covered persons," commonly referred to as "potentially responsible parties" or "PRPs." These four categories of PRPs are:

(1)    owners and operators of facilities at which hazardous substances are located;

(2)    past owners and operators of such facilities at the time hazardous substances were disposed of;

(3)    persons who arranged for disposal or treatment of hazardous substances; and

(4)    certain transporters of hazardous substances to the site.

42 U.S.C. § 9607(a)(1)-(4).[1]

A PRP can escape liability for response costs only if it can establish that it qualifies for one of the enumerated defenses in section 107(b), 42 U.S.C. § 9607(b), or some other narrowly defined exclusion from liability.[2] Section 107(b) specifies the defenses to liability and provides that a PRP will not be liable if it can establish that the release of hazardous substances

> [was] caused solely by – (1) an act of God; (2) an act of war; (3) an act or omission of a third party, other . . . than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant . . . if the defendant establishes . . . that (a) he exercised due care with respect to the hazardous substance concerned . . . and (b) he took precautions against foreseeable acts or omissions of any such third party . . . .

Id.

---

[1] Congress has broadly defined the pertinent statutory terms used in section 107 – including "facility," "hazardous substance," "owner or operator," "person," "release," "transport," and "disposal" – to reach a wide range of entities and activities. See 42 U.S.C. § 9601(9), (14), (20)-(22), (26), (29).

[2] See, e.g., 42 U.S.C. §§ 9607(n) (liabilities of fiduciaries and certain exclusions), 9607(q) (contiguous properties), 9607(r) (bona fide prospective purchasers).

Assuming that a PRP cannot avail itself of one of the enumerated defenses or exclusions to liability, section 107(a) specifically provides that the United States, individual States, and Indian tribes are entitled to recover from PRPs "all costs of removal or remedial action incurred" that are "not inconsistent with the national contingency plan."[3] 42 U.S.C. § 9607(a)(4)(A).

In addition, section 107 provides that PRPs "shall be liable for . . . any other necessary costs of response incurred by any other person consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B). Several courts of appeals have concluded that persons <u>who are not themselves liable</u> may clean up contaminated property and then invoke this provision to seek <u>full</u> reimbursement from the same four categories of PRPs that are subject to government cleanup actions.[4] Additionally, eight courts of appeals have concluded that a person who falls within one of those four categories and, thus, is itself a PRP, cannot rely on section 107(a) to obtain <u>full</u> recovery of response costs from another jointly liable party; rather, a party that is itself a PRP is limited to seeking <u>contribution</u> from other jointly liable parties in accordance with section 113(f).[5]

---

[3] "The national contingency plan specifies procedures for preparing and responding to contaminations and was promulgated by the [EPA] pursuant to CERCLA § 105, 42 U.S.C. § 9605 (2000 ed. and Supp. I). The plan is codified at 40 C.F.R. pt. 300 (2004)." <u>Cooper Indus. Inc. v. Aviall Servs., Inc.</u>, 543 U.S. 157, 161 n.2 (2004) ("<u>Aviall</u>").

[4] See <u>In re Reading Co.</u>, 115 F.3d 1111, 1120 (3d Cir. 1997); <u>Rumpke, Inc. v. Cummins Engine Co.</u>, 107 F.3d 1235, 1242-43 (7th Cir. 1997); <u>Redwing Carriers, Inc. v. Saraland Apartments</u>, 94 F.3d 1489, 1496 (11th Cir. 1996); <u>United Techs. Corp. v. Browning-Ferris Indus.</u>, 33 F.3d 96, 100 (1st Cir. 1994); <u>Akzo Coatings, Inc. v. Aigner Corp.</u>, 30 F.3d 761, 764 (7th Cir. 1994).

[5] <u>E.I. DuPont De Nemours and Co. v. United States</u>, 460 F.3d 515, 528-29 (3d Cir. 2006); <u>Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.</u>, 153 F.3d 344, 356 (6th Cir. 1998); <u>Pneumo Abex Corp. v. High Point, Thomasville & Denton R.R.</u>, 142 F.3d 769, 776 (4th Cir. 1998); <u>Pinal Creek Group v. Newmont Mining Corp.</u>, 118 F.3d 1298, 1301 (9th Cir. 1997); <u>Redwing Carriers</u>, 94 F.3d at 1496; <u>United States v. Colorado & E. R.R.</u>, 50 F.3d 1530, 1534-36 (10th Cir. 1995); <u>United Techs. Corp.</u>, 33 F.3d at 103; <u>Akzo</u>, 30 F.3d at 764. But <u>see</u> <u>Atlantic</u>

(continued...)

Congress enacted section 113(f) in 1986 as part of the SARA amendments to address specifically when a PRP may seek contribution from other PRPs.  See 42 U.S.C. § 9613(f). Section 113(f)(1) provides in pertinent part that "[a]ny person may seek contribution from any other person who is liable or potentially liable under [section 107(a)], during or following any civil action under [section 106] or under [section 107(a)]."  Id.  The Supreme Court recently held, in Aviall, 543 U.S. at 157, that a party may not bring a contribution claim under section 113(f)(1) in the absence of a preexisting civil action against that party to undertake or pay for the cleanup. 542 U.S. at 158-59.   In addition, CERCLA section 113(f)(3)(B) provides an express right of contribution for:

> [a] person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in [section 113(f)(2)].

42 U.S.C. § 9613(f)(3)(B).  The Supreme Court in Aviall explained the difference between sections 113(f)(1) and (f)(3)(B), stating that under section 113(f)(1) "contribution may only be sought subject to the specified conditions, namely, 'during or following' a specified civil action." 543 U.S. at 166.  Section 113(f)(3)(B), however, "permits contribution actions after settlement . . ."  Id.

Section 113(f)(2) provides that "[a] person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement."  42 U.S.C. § 9613(f)(2).

---

[5]/(...continued)
Research Corp. v. United States, 459 F.3d 827, 835 (8th Cir. 2006), petition for cert. filed, __U.S.L.W. __, (U.S. Oct. 24, 2006) (No. 06-562); Consolidated Edison Co. v. UGI Utils., Inc., 423 F.3d 90, 97 (2d Cir. 2005), petition for cert. filed, 74 U.S.L.W. 3600 (U.S. April 14, 2006) (No. 05-1323).

Thus, a PRP that resolves its liability to the United States or a State in an administrative or judicially approved settlement receives two advantages under section 113(f). It receives from section 113(f)(2) protection against claims for contribution by other PRPs, and it may bring its own claim for contribution against non-settling PRPs pursuant to section 113(f)(3)(B).

Plaintiffs have not asserted any claim for contribution under CERCLA section 113. Thus, the central issue in this case is whether Plaintiffs – which are themselves PRPs and do not qualify for one of the enumerated defenses in section 107(b) or for any other exclusion to liability – can rely on CERCLA section 107(a) to bring an action against the United States to recover response costs. As discussed below, Plaintiffs cannot.

## II.    FACTUAL ALLEGATIONS IN COMPLAINT

The land now referred to as the Great Neck Site was acquired by a government corporation, the Defense Plant Corporation, as undeveloped land in 1941.[6] Complaint ("Compl.") ¶¶ 8-10. During that same year, the Defense Plant Corporation contracted with Sperry Gyroscope Corporation for the construction of a manufacturing facility the Great Neck Manufacturing Facility. Id. ¶ 10. Sperry leased the facility from the Defense Plant Corporation and, in 1942, began production of military equipment. Id.

In 1950, Sperry's corporate successor (Sperry Corporation) purchased the facility from the government. Id. ¶ 14. Sperry Corporation used the facility primarily for the performance of government contracts. Id. ¶ 17. Many of the production processes at the facility between 1942 and 1979 required the use of trichloroethylene ("TCE") and tetrachloroethylene ("TCA"). Id. ¶¶ 24-25.

---

[6] Consistent with the requirements of Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the United States accepts the complaint's factual allegations as true for the purposes of this motion to dismiss.

Plaintiff Unisys, which was formed in 1986, is the corporate successor to Sperry Corp. Id. ¶ 3.  In 1995, Loral Corp., a predecessor to plaintiff Lockheed Martin, purchased the facility.[7] Id. ¶¶ 2-3.  Unisys has spent funds to take action in response to contamination at the Site due to TCE and PCE pursuant to an Agreed Order on Consent with the New York State Department of Environmental Conservation ("DEC") entered in 1991.  Id. ¶ 30.  Both Unisys and Lockheed have spent funds to implement specific actions at the Site pursuant to a Record of Decision issued by DEC in 1997.  Id. ¶ 32.

## STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must accept the complaint's factual allegations as true.  Cummings v. Dep't of the Navy, 279 F.3d 1051, 1053 (D.C. Cir. 2002).  The complaint must be dismissed if plaintiff cannot prove any set of facts that would entitle it to relief.  Cicippio-Puleo v. Islamic Republic of Iran, 353 F.3d 1024, 1032 (D.C. Cir. 2004).

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), a court must consider whether plaintiff's allegations are sufficient to meet its burden of establishing the Court's jurisdiction over this  claim.  Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).  Because the federal courts "possess only that power authorized by Constitution and statute," id., plaintiffs must identify a statute or constitutional provision that provides jurisdiction.  Moreover, in a suit against the United States, plaintiffs must also identify an applicable waiver of sovereign immunity in order to establish jurisdiction.  United States v. Mitchell, 463 U.S. 206, 212 (1983).

---

[7] For the sake of simplicity, the United States will hereafter use Lockheed and Unisys as appropriate when referring to the predecessors of each of these corporations.

## ARGUMENT

### I.    PLAINTIFFS ARE PRPS AND CANNOT INVOKE ANY OF THE ENUMERATED DEFENSES UNDER CERCLA

The allegations in the Complaint establish that both Unysis and Lockheed are PRPs.  As the current owner of the Facility, Compl. ¶¶ 2-3, Lockheed is a PRP under section 107(a)(1), which provides liability for owners and operators of facilities at which hazardous substances are located.  42 U.S.C. § 9607(a)(1).  The Complaint also establishes that (1) Unysis owned the Facility between 1950 and 1995, Compl. ¶¶ 3, 14; and (2) TCE and PCE were used there between 1942 and 1979, id. ¶¶ 24-25.  Thus, Unisys is a PRP under section 107(a)(2), which provides liability for past owners and operators of facilities at the time hazardous substances were disposed of.[8]  42 U.S.C. § 9607(a)(2)).

The Complaint does not allege the facts necessary to establish that any of the enumerated defenses to CERCLA liability are applicable.  See supra 3.  As PRPs, Plaintiffs cannot maintain a cause of action under CERCLA section 107(a) against another PRP.[9]

---

[8]  The complaint is carefully drafted to avoid any allegation that Unysis or Lockheed could be liable under section 107(a)(3) or (4).  Consistent with the strictures of Fed. R. Civ. P 12(b)(1) and 12(b)(6), the United States will therefore avoid any argument premised on these sections for the purpose of the instant motion.  The United States reserves its rights to raise arguments based on sections 107(a)(3) and (4) at any other stage in this proceeding.

[9]  The United States is not waiving any of its defenses to liability, including whether the United States is a PRP.  For purposes of this motion only, however, the United States will assume the truth of Plaintiffs' allegations that the United States is a PRP.

## II.    AS PRPS, PLAINTIFFS' CLAIM TO RECOVER RESPONSE COSTS UNDER CERCLA SECTION 107(a) IS CONTRARY TO LAW

The Complaint relies only on CERCLA section 107(a).  Compl. ¶ 1.  The Complaint should be dismissed because, for the reasons set forth below, parties that are PRPs under CERCLA cannot maintain a cost-recovery claim against another PRP solely under CERCLA section 107(a).  Instead, as PRPs, Plaintiffs are limited to seeking contribution from other liable parties in accordance with CERCLA section 113(f).

### A.    The Weight of Judicial Authority Requires Dismissal

#### 1.    Most of the courts of appeals would dismiss the action.

The question of whether a PRP can seek relief under section 107(a) has been litigated extensively.[10]  Eight courts of appeals have concluded that section 107(a) does not permit such a claim.  These courts have held that PRPs could not bring actions against other PRPs under section 107(a) in various circumstances in which the PRP could not avail itself of section 113(f), including (1) where (as here) the PRP had not yet been sued under either section 106 or section 107(a).  E.I. DuPont De Nemours and Co. v. United States, 460 F.3d 515, 528-29 (3d Cir. 2006) (rehearing pet. pending); Pinal Creek Group v. Newmont Mining Corp., 118 F.3d 1298, 1301-06 (9th Cir. 1997)[11]; Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp., 153 F.3d 344, 356 (6th Cir. 1998); Redwing Carriers, Inc. v. Saraland Apartments, 94 F.3d 1489, 1496 (11th Cir. 1996);

---

[10]  This section of the United States' brief is intended to simply identify the most relevant decisions by the federal courts of appeals and this Court.  The substantive analysis is addressed in the later sections.

[11]  The Ninth Circuit has been asked by appellants in City of Rialto v. Dep't of Defense (Case No. 05-56749 and consolidated cases) to revisit Pinal Creek Group v. Newmont Mining Corp. Appellants seek review of an unpublished district court decision holding that a PRP may not seek recovery under section 107(a).  City of Rialto v. Dep't of Defense, No. EDCV 04-00759, 2005 U.S. Dist. LEXIS 26941 (C.D. Cal. Aug. 16, 2005).

(2) where the limitations period applicable to a section 113(f) contribution action had already run, New Castle County v. Halliburton, 111 F.3d 1116, 1120 (3d Cir.); United Techs. Corp. v. Browning-Ferris Indus., 33 F.3d 96, 101 (1st Cir. 1994); and (3) where the PRP being sued had reached a settlement with the government (and thus was protected from a section 113(f) contribution action), United States v. Colorado & E. R.R., 50 F.3d 1530, 1534-36 (10th Cir. 1995); Akzo Coatings, Inc. v. Aigner Corp., 30 F.3d 761, 764 (7th Cir. 1994).[12] See also Pneumo Abex Corp. v. High Point, Thomasville & Denton R.R., 142 F.3d 769, 776 (4th Cir. 1998).

Although those decisions arise in various factual contexts, many of them state their holdings in broad terms that categorically foreclose PRPs from bringing actions for cost recovery against other PRPs under section 107(a).  See, e.g., Pneumo Abex Corp. v. High Point, Thomasville & Denton R.R., 142 F.3d at 776 (noting that "section 113 must be used by parties who are themselves potentially responsible parties"); New Castle County, 111 F.3d at 1120 (stating that "[a]n action brought by a potentially responsible person is by necessity a section 113 action for contribution"); Rumpke, Inc. v. Cummins Engine Co., 107 F.3d 1235, 1240 (7th Cir. 1997) (reasoning that "when two parties who both injured the property have a dispute about who pays how much—a derivative liability, apportionment dispute—the statute directs them to § 113(f) and only to § 113(f)").

---

[12] The continued validity of the Seventh Circuit's decision in Akzo has been raised to that court by the appellees in Metropolitan Water Reclamation District v. North American Galvanizing Coatings, Inc. (Case No. 05-3299) (7th Cir.), the pending appeal from the district court decision in Metropolitan Water Reclamation District of Greater Chicago v. Lake River Corp., 365 F. Supp. 2d 913, 918 (N.D. Ill. 2005), which held that a PRP "may seek contribution from other responsible parties under § 107(a)."  The United States is not a party to this case, but at the Seventh Circuit's request, has filed an amicus brief consistent with this motion.

In addition, the Fifth Circuit, although it does not appear to have directly addressed this issue, also has recognized that "[w]hen one liable party sues another to recover its equitable share of the response costs, the action is one for contribution, which is specifically recognized under CERCLA." Amoco Oil Co. v. Borden, Inc., 889 F.2d 664, 672 (5th Cir. 1989). See also Elementis Chromium L.P. v. Coastal States Petroleum Co., 450 F.3d 607, 613 (5th Cir. 2006) ("'[W]hen one liable party sues another liable party under CERCLA, the action is not a cost recovery action under § 107(a),' and the imposition of joint and several liability is inappropriate." (quoting Redwing Carriers, 94 F.3d at 1513)).

### 2. Two appellate courts would allow the claim to proceed.

Two courts of appeals have reached the contrary conclusion. In Consolidated Edison Co. v. UGI Utils., Inc., 423 F.3d 90, 97 (2d Cir. 2005), petition for cert. filed, 74 U.S.L.W. 3600 (U.S. April 14, 2006) (No. 05-1323), the court held that section 107(a)(4)(B) permits a PRP that has not been sued or made to participate in an administrative proceeding and has voluntarily incurred response costs to bring a claim for recovery of all of its necessary response costs (i.e., for joint and several liability) from other PRPs. 423 F.3d at 99-102 & n.9.[13] The Eighth Circuit relied on Consolidated Edison in deciding that a PRP may proceed against another PRP under section 107(a) when the claim does not meet the requirements for a contribution claim under

_____

[13] The court acknowledged that it, like other courts of appeals, had previously held that a PRP could not bring an action for cost recovery against another PRP under section 107(a), but was instead limited to an action for contribution under section 113(f). 423 F.3d at 98-99 (citing Bedford Affiliates v. Sills, 156 F.3d 416 (2d Cir. 1998)). But the court concluded that its earlier decision (which "h[e]ld that a potentially responsible person . . . cannot maintain a § 107(a) action against another potentially responsible person," 156 F.3d at 425) had arisen in a different factual setting and could have been decided without resolving that question. Id. at 99-102.

section 113(f).  Atlantic Research Corp. v. United States, 459 F.3d 827, 835 (8th Cir. 2006)

("ARC"), petition for cert. filed, __U.S.L.W. __ (U.S. Oct. 24, 2006) (No. 06-562).[14]

The Second Circuit held that the PRP had a direct right of recovery based on the

language of section 107(a).  Consolidated Edison, 423 F.3d at 97.  The Eighth Circuit also

recognized a statutory right of recovery, but further held that "[a]lternatively, we are satisfied

that a right to contribution may be fairly implied from the text of §107(a)(4)(B)."  ARC, 459

F.3d at 835.

### 3.    This Court's decisions have been inconsistent.

The D.C. Circuit has not addressed the question at issue here, but it has been considered

by this Court.  In Foster v. United States, 922 F. Supp. 642 (D.D.C. 1996), the current owner of a

contaminated facility sought to recover all of its response costs from defendants.  This Court

found that plaintiff failed to meet the statutory criteria to assert the "innocent landowner"

defense.  Id. at 655.  The Court held:

> [b]ecause the plaintiff is himself a liable party, he may not recover all his
> allowable costs from other liable parties through a recovery action under 42
> U.S.C. § 9607.  Instead, he may recover only an equitable allocation of those
> costs under 42 U.S.C. § 9613.

Id. at 657 n.17; see Foster v. United States, 130 F. Supp. 2d 68, 74-75 (D.D.C. 2001) (same).

This Court recently addressed the question of whether section 107(a) provides a cause of

action for a PRP in Viacom, Inc. v. United States, 404 F. Supp. 2d 3 (D.D.C. 2005).[15]  Viacom,

---

[14]  The Eighth Circuit had previously held that a PRP could not bring an action under section
107(a).  Dico, Inc. v. Amoco Oil Co., 340 F.3d 525, 531 (8th Cir. 2003).  The ARC panel
decided that it could depart from Dico because (1) it was factually distinguishable and (2) Dico's
analysis had been undermined by Aviall.  ARC, 459 F.3d at 830.

[15]  This same question is also at issue in a pending motion to dismiss filed by the United States in
Hercules Inc. v. United States, Civil Action No. 1:03CV01475 (RWR) (D.D.C., filed July 3,

(continued...)

the current owner and a PRP at the particular site sought to recover response costs from the

United States, which Viacom alleged to be a PRP at the Site as well, under section 107(a).  The

Court denied the United States' motion to dismiss after finding that

> the text of § 107, combined with an implied cause of action thereunder identified
> by the Supreme Court [in <u>Key Tronic Corp.</u>] compel the result that Viacom may
> seek to recover its Superfund costs under that section. <u>See</u> <u>Key Tronic Corp.</u>, 511
> U.S. at 818 ("[section] 107 unquestionably provides a cause of action for private
> parties to seek recovery of cleanup costs.").

404 F. Supp. 2d at 7. [16]

B.    **The Plain Language of Section 107(a) Does Not Allow a Claim by PRPs
Against Another PRP**

In all cases involving the construction of a statute, the analysis must begin with the

language of the statute itself.  <u>Barnhart v. Sigmon Coal Co., Inc.</u>, 534 U.S. 438, 450 (2002).

---

[15] (...continued)
2003).

[16]   Other federal district courts in post-<u>Aviall</u> decisions have reached different conclusions.
<u>Compare</u>, <u>e.g.</u>, <u>City of Bangor v. Citizens Comm'ns Co.</u>, 437 F. Supp. 2d 180, 222-23 (D. Me.
2006); <u>Raytheon Aircraft Co. v. United States</u>, 435 F. Supp. 2d 1136, 1145-50 (D. Kan. 2006);
<u>Sunnyside Dev. Corp. LLC v. Opsys U.S. Corp.</u>, No. C 05-01447 SI, 2006 WL 1128039, at *2
(N.D. Cal. April 27, 2006); <u>Ferguson v. Arcata Redwood Co. LLC</u>, No. C 03-05632 SI, 2005
WL 1869445, at *6 (N.D. Cal. Aug. 2, 2005); <u>Koutrous v. Goss-Jewett Co.</u>, No. Civ. S02-1520
FCD JFM, 2005 WL 1417152, at **3-4 (E.D. Cal. June 16, 2005); and <u>Vine Street LLC v.
Keeling</u>, 362 F. Supp. 2d 754, 760-64 (E.D. Tex. 2005) (all allowing PRPs to sue under section
107(a)), <u>with</u> <u>AMCAL Multi-Housing, Inc. v. Pacific Clay Prods.</u>, No. EDCV-06-280-SGL,
2006 WL 3016326, at *1 (C.D. Cal. Oct. 10, 2006);  <u>Aviall Servs., Inc. v. Cooper Indus., LLC</u>,
No. 3:97-CV-1926-D, 2006 WL 2263305, at **3-10 (N.D. Tex. Aug. 8, 2006); <u>R.E. Goodson
Constr. Co. v. International Paper Co.</u>, No. C/A 4:02-4184-RBH, 2005 WL 2614927, at **5-6,
*8 (D.S.C. Oct. 13, 2005); <u>Montville Township v. Woodmont Builders, LLC</u>, No. Civ. A.
03-280 DRD, 2005 WL 2000204, at *3 (D.N.J. Aug. 17, 2005); <u>Boarhead Farm Agreement v.
Advanced Envtl. Tech. Corp.</u>, 381 F. Supp. 2d 427, 435 (E.D. Pa. 2005); <u>City of Waukesha v.
Viacom Int'l, Inc.</u>, 362 F. Supp. 2d 1025, 1027-28 (E.D. Wis. 2005); <u>Mercury Mall Assocs., Inc.
v. Nick's Mkt., Inc.</u>, 368 F. Supp. 2d 513, 519-20 (E.D. Va. 2005) (all foreclosing PRPs from
suing under section 107(a)).

A careful reading of section 107(a) shows that the statute does not authorize one PRP to bring suit against another independent of the restrictions imposed by section 113(f). The relevant language in section 107(a) provides that PRPs— i.e., persons who fall into the four categories enumerated in section 107(a)(1-4)—shall be liable for "any other necessary costs of response incurred by any other person consistent with the national contingency plan." CERCLA § 107(a)(1-4)(B), 42 U.S.C. 9607(a)(1-4)(B). That passively worded provision "impliedly authorizes suit" by "any other person" against PRPs. Key Tronic Corp. v. United States, 511 U.S. 809, 818 (1994); but see id. at 822 (Scalia, J., dissenting in part) (characterizing provision as creating an express cause of action). The most natural reading of the phrase "any other person" is that it excludes the persons who are the subject of the sentence: i.e., PRPs. Cf. Jama v. Immigration and Customs Enforcement, 543 U.S. 335, 342-43 & n.3 (2005) (holding that statutory phrase "another country" excluded countries listed in previous clauses, on ground that "both 'other' and 'another' are just as likely to be words of differentiation as they are to be words of connection.").[17]

Thus, read as a whole, the better interpretation is that the phrase "any other person" in section 107(a)(4)(B) distinguishes the persons to whom PRPs are liable not only from the United States, States, and Indian Tribes, but also from the four categories of PRPs. That reading of the statute does not strip section 107(a)(1-4)(B) of operative effect, because it still provides a cause of action for persons other than PRPs, namely, "innocent" private parties who have incurred the

---

[17] See also Porto Rico Ry., Light & Power Co. v. Mor, 253 U.S. 345, 348 (1920) ("When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all."); League of Wilderness Defenders v. Forsgren, 309 F.3d 1181, 1186 (9th Cir. 2002); Shendock v. Director, OWCP, 893 F.2d 1458, 1464 (3d Cir. 1990); United States v. Pritchett, 470 F.2d 455, 459 (D.C. Cir. 1972).

requisite costs.  See United Technologies, 423 F.3d at 99-100; New Castle County, 111 F.3d at 1120.  Under that reading, however, section 107(a)(1-4)(B) does not authorize PRPs to sue each other for cost recovery.

Consolidated Edison reads section 107(a)(4)(B) to make the PRPs listed in section 107(a)(1)-(4) liable for costs incurred by both non-liable private parties and other PRPs.  See also ARC, 459 F.3d at 835 ("We have held that 'any other person' means any person other than the statutorily enumerated 'United States Government or a State or an Indian tribe.'").  That interpretation lacks merit.  To be sure, the preceding subparagraph of section 107(a) provides a parallel cause of action for those enumerated governmental entities against PRPs.  See CERCLA § 107(a)(1-4)(A), 42 U.S.C. 9607(a)(1-4)(A).  It does not follow, however, that the phrase "any other person" in section 107(a)(1-4)(B) was intended merely to exclude those entities (as opposed to PRPs generally) from asserting a claim under that subparagraph.  To the contrary, other operative language in section 107(a)(1-4)(B)—namely, its reference to "other necessary costs" (i.e., costs other than the costs specified in section 107(a)(1-4)(A), see, e.g., Wickland Oil Terminals v. Asarco, Inc., 792 F.2d 887, 891 (9th Cir. 1986))—ensures that those governmental entities can recover only under section 107(a)(1-4)(A) and are precluded from recovering under section 107(a)(1-4)(B).  Thus, far from giving meaning to the phrase "any other person" in section 107(a)(1-4)(B), the court of appeals' interpretation in fact renders it entirely superfluous.[18]

_____

[18]  Viacom adopted the same interpretation as Consolidated Edison, 404 F. Supp. 2d at 7. Viacom also relied on the statements by the Supreme Court in Key Tronic Corp. v. United States, that section 107 "impliedly authorizes private parties to recover cleanup costs from other [responsible parties]" and that the remedies of section 107 and 113 are "somewhat overlapping." 511 U.S. at 816.  The Court has now made clear that this statement in Key Tronic is not necessarily controlling.  Aviall, 543 U.S. at 170.  The majority opinion specifies that it is

(continued...)

15

**C.**     **Consideration of Section 107(a) Together With  Section 113(f) Further Demonstrates That Section 107(a) Does Not Provide A Claim For A PRP**

**1.**     **A historical review of how contribution claims arose under CERCLA and the relationship between CERCLA sections 107(a) and 113(f) illustrates why section 107(a) cannot be construed as affording an independent right of recovery to a PRP.**

Section 113(f) was enacted to provide an explicit statutory right to contribution, which Congress had omitted deliberately in enacting CERCLA.  DuPont, 460 F.3d at 521-25, 534 n.23. In applying section 107(a), the federal courts concluded that PRPs generally are jointly and severally liable for indivisible harms, which can result in one PRP bearing a disproportionate share of the response costs.  Id. at 521.  Despite the absence of any specific mechanism in CERCLA that would allow one PRP to seek contribution from other PRPs, several district courts found that the right to contribution either could be implied from CERCLA or could arise as a matter of federal common law.  See Aviall, 543 U.S. at 162 (citing United States v. New Castle County, 642 F. Supp. 1258, 1263-69 (D. Del. 1986) (contribution right arises under federal common law); Colorado v. ASARCO, Inc., 608 F. Supp. 1484, 1486-93  (D. Colo. 1985) (same); Wehner v. Syntex Agribusiness, Inc., 616 F. Supp. 27, 31 (E.D. Mo. 1985) (contribution right is implied from § 107(e)(2)).[19]  This "judicially-created expansion of § 107(a)(4)(B) served as the sole means by which parties could obtain contribution," until Congress enacted section 113(f),

---

[18]/(...continued)
"leaving open whether Aviall may seek cost recovery under § 107."  Id.

[19]  The Supreme Court in Aviall noted that these district court decisions were "debatable in light of two decisions of this Court that refused to recognize implied or common-law rights to contribution in other federal statues."  543 U.S. at 162 (citing Texas Indust., Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 638-47 (1981)); Northwest Airlines, Inc. v. Transport Workers, 451 U.S. 77, 90-99 (1981)).  See infra 35-36.

which provided for an express right of contribution between PRPs.  Reading Co., 115 F.3d at 1119.

Section 113(f) provided "any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title."  Congress, however, limited this remedy to two specific circumstances:  (1) where the PRP is seeking contribution "during or following any civil action" under section 106 or section 107(a), see CERCLA § 113(f)(1), 42 U.S.C. 9613(f)(1), or (2) where the PRP is seeking contribution after entering into an administrative or judicially approved settlement with the government, see CERCLA § 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B).  See Aviall, 543 U.S. at 162-63.  Section 113(f) also includes other limitations that are not applicable under section 107(a):  "[s]ection 113's right is subject to a three-year statute of limitations; plaintiffs can recover only costs in excess of their equitable share, and may not recover from previously-settling parties."  ARC, 459 F.3d at 832 (citing section 113(f)(1), (f)(2), (g)(3)).

Thus, "CERCLA and SARA together create two different kinds of legal actions by which parties can recoup some or all of the costs associated with clean-ups:  section 107 cost recovery actions, . . . and section 113 contribution actions."  New Castle County, 111 F.3d at 1120; see United Techs. Corp., 33 F.3d at 98; Colorado & E. R.R., 50 F.3d at 1535.  The two remedies overlap to some extent because they both allow private parties to recoup costs from other private parties in certain situations.  Aviall, 543 U.S. at 163.  Despite this slight overlap, however, "the two remedies are clearly distinct."  Id. n.3.  A section 107 cost recovery action may be brought only by governmental entities or non-liable private parties who have undertaken cleanups, not by PRPs.  E.g., DuPont, 460 F.3d at 522; Pinal Creek, 118 F.3d at 1306.  Other PRPs are limited to actions for contribution under section 113(f).

After SARA, actions brought in contribution are governed by section 113(f), but liability in such actions is governed by section 107(a). Section 113(f)(1) provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable under section [107(a)] of this title." 42 U.S.C. § 9613(f)(1) (emphasis added). Thus, section 113(f) provides the cause of action for contribution by PRPs, while section 107 provides the basis and elements for a claim for recovery of "necessary costs of response" and establishes the parties who are liable. See In re Dant & Russell, Inc., 951 F.2d 246, 249 (9th Cir. 1991); County Line Inv. Co. v. Tinney, 933 F.2d 1508, 1516-17 (10th Cir. 1991) (Section 113 should not be read in isolation from section 107; contribution claims pleaded under section 113(f)(1) held subject to the requirement of section 107 that costs sought to be recovered be "consistent with the National Contingency Plan").

### 2.    Section 113(f) is the exclusive mechanism for recovery by a PRP against other PRPs.

To decide whether section 107(a) provides a remedy for a PRP, the Court should consider both section 107(a) and section 113(f). A "central tenet of interpretation" is that "a statute is to be considered in all its parts when construing any one of them." Lexecon Inc. v. Milberg Weis Bershad Hynes & Lerach, 523 U.S. 26, 36 (1998). See also King v. St. Vincent's Hosp., 502 U.S. 215, 221(1991) (congressional enactments should be construed in light of the "the cardinal rule that a statute is to be read as a whole"). In addition, the Court should consider whether the enactment of section 113(f) was intended to affect the application of section 107(a). See, e.g., United States v. Fausto, 484 U.S. 439, 453 (1988) (explaining that "the implications of a statute may be altered by the implications of a later statute").

In light of these principles of statutory construction, the best reading of CERCLA is that the subsequently enacted section 113(f) specifies the exclusive circumstances in which one PRP may bring suit against another under CERCLA. Were it not true that section 113(f) displaced any preexisting cause of action under section 107(a), a PRP could readily circumvent the various limitations on an action under section 113(f) simply by pursuing an action under section 107(a), thereby rendering section 113(f) effectively superfluous. Thus, a PRP that is outside the three-year limitations period for an action under section 113(f), see CERCLA § 113(g)(3), 42 U.S.C. § 9613(g)(3), could take advantage of the typically more generous limitations period for an action under section 107(a), see CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2). And a PRP that wished to sue another PRP that had itself reached a settlement with the government (and thus could not be sued under section 113(f)), see CERCLA § 113(f)(2) and (f)(3)(B), 42 U.S.C. § 9613(f)(2) and (f)(3)(B)), seemingly could simply sue that PRP under section 107(a), which contains no analogous limitation on a settling PRP's liability in an action for cost recovery. As with the foregoing limitations, there is no justification for permitting a PRP to circumvent section 113(f)'s express limitation on bringing suit before an action under section 106 or section 107(a) is commenced (or a settlement is reached), see CERCLA § 113(f)(1) and (f)(3)(B), 42 U.S.C. § 9613(f)(1) and (f)(3)(B); Aviall, 543 U.S. at 168, simply by pursuing an action under section 107(a) itself. Such an interpretation would "violate the settled rule that [courts] must, if possible, construe a statute to give every word some operative effect." Id. at 167. See DuPont, 460 F.3d at 522 (Congress intended that section 113(f) would displace any judicially-created implied or common law contribution rights and would provide the "express (and exclusive) statutory remedy" for contribution.).

19

Several circuits have rejected efforts by PRPs to rely on section 107(a) on the ground that such a claim would negate specific provisions of section 113(f). The Third Circuit has explained:

> [a]llowing a potentially responsible person to choose between section 107 (with a six-year statute of limitations and joint and several liability) and section 113 (with a three-year statute of limitations and apportioned liability based upon equitable considerations) would render section 113 a nullity. Potentially responsible persons would quickly abandon section 113 in favor of the substantially more generous provisions of section 107.

New Castle County, 111 F.3d at 1122-23 (refusing to allow a PRP that failed to meet section 113(g)(3)'s statute of limitations for contribution claims to avoid that requirement by bringing a cost recovery action under 107(a)(4)(B)). United Technologies Corp., 33 F.3d at 101 (same).[20]

Moreover, if section 107(a) is available as an alternate remedy, a PRP could circumvent section 113(f)(2), which provides a PRP that has resolved its liability to the United States or a State with protection against contribution claims by other PRPs seeking recovery for matters addressed in the settlement. See Pinal Creek, 118 F.3d at 1304 ("[b]oth the Seventh and Tenth Circuits rejected a working PRP's attempt to avoid the effect of § 113(f)(2) by rejecting the argument that the PRP's claim was governed by § 107.") (citing Colorado & E. R.R., 50 F.3d at 1534-36; Akzo, 30 F.3d at 764). See also In re Reading, 115 F.3d at 1119 ("[T]hat would throw a proverbial monkey wrench into the works," because "[c]onsent agreements would no longer provide protection, and settling parties would have to endure additional rounds of litigation to apportion their losses.").

---

[20] See also Bedford Affiliates v. Sills, 156 F.3d at 424 ("We decline to interpret § 107(a) so broadly that § 113(f)(1) would become a nullity.").

3.    **The contrary decisions by the Second and Eighth Circuits misread
Aviall and fail to recognize that any claim by a PRP is essentially a
claim for contribution, regardless of how it is pled.**

The Eighth and Second Circuits, however, have concluded that the remedies available to

PRPs pre-SARA were <u>not</u> displaced by the enactment of section 113(f).  <u>ARC</u>, 459 F.3d at 836;

<u>Consolidated Edison</u>, 423 F.3d at 99-100 & n.9.  <u>See also</u> <u>Viacom</u>, 404 F. Supp. 2d at 7.  The

Second Circuit decided that the cases discussed above were inconsistent with the subsequent

<u>Aviall</u> decision, a conclusion adopted by the Eighth Circuit.

> In [<u>Aviall</u>], however, the Supreme Court expressly stated that the section 107(a)
> cost recovery remedy and the section 113(f)(1) contribution remedy, though
> "similar at a general level in that they both allow private parties to recoup costs
> from other private parties," are "clearly distinct."  <u>Id</u>. at 582 n. 3.  Moreover, the
> Court held in [<u>Aviall</u>] that a section 113(f)(1) action is only available during or
> following a specified civil action.  [<u>Aviall</u>], 125 S.Ct. at 583.  This holding impels
> us to conclude that it no longer makes sense to view section 113(f)(1) as the
> means by which the section 107(a) cost recovery remedy is effected by parties
> that would themselves be liable if sued under section 107(a).  Each of those
> sections, 107(a) and 113(f)(1), embodies a mechanism for cost recovery available
> to persons in different procedural circumstances.

<u>Consolidated Edison</u>, 423 F.3d at 99.[21/]

The suggestion that <u>Aviall</u>'s statement that the remedies afforded by sections 107(a) and

113(f) are "distinct" is inconsistent with earlier case law is not accurate.  In fact, the courts of

appeals decisions limiting PRPs to contribution claims under section 113(f) recognized that the

remedies provided by that provision and section 107(a) are distinct.  <u>See</u> <u>New Castle County</u>,

---

[21/]  In <u>Viacom</u>, the Court stated that <u>Aviall</u>, 543 U.S. at 169, "clarified . . .  contrary to the
holdings of several circuits, that § 113(f) does not bar other types of response cost recovery
actions."  404 F. Supp. 2d at 7 (citing <u>Bedford Affiliates v. Sills</u>, 156 F.3d at 416; <u>New Castle
County</u>, 111 F.3d at 1122; and <u>Colorado & E. R.R.</u>, 50 F.3d at 1536).  The cited section of
<u>Aviall</u>, however, contains the Supreme Court's discussion of the reasons it was withholding
judgment on the question of whether section 107(a) provides relief to a PRP; it does not indicate
whether the appellate courts were correct or not.  543 U.S. at 169.

111 F.3d at 1120 ("CERCLA and SARA together create two different kinds of legal actions by which parties can recoup some or all of the costs associated with clean-ups:  section 107 cost recovery actions, . . . and section 113 contribution actions."  See also United Techs., 33 F.3d at 98; Colorado & E. R.R., 50 F.3d at 1535.   Nevertheless, those courts held that, of the two distinct remedies, the appropriate remedy for allocation claims between PRPs was a contribution claim governed by section 113(f).

As the Sixth Circuit has explained "any person may seek to recover costs under § 107(a), but . . . it is the nature of the action which determines whether the action will be governed exclusively by § 107(a) or by § 113(f) as well."  Centerior Serv., 153 F.3d at 353 (citations omitted) (emphasis added).

> Cost recovery actions by parties not responsible for site contamination are joint and several cost recovery actions governed exclusively by § 107(a).  Claims by PRPs, however, seeking costs from other PRPs are necessarily actions for contribution and are therefore governed by the mechanisms set forth in § 113(f).

Id. at 350.  Courts have correctly understood that "any claim that would reapportion costs between [PRPs] is the quintessential claim for contribution."  Colorado & E. R.R., 50 F.3d 1530 at 1536 (citing Restatement (Second) of Torts, § 886A (1979); Amoco Oil Co.  v.  Borden Inc., 889 F.2d 664, 672 (5th Cir.  1989)).  Accord Pinal Creek, 118 F.3d at 1301-03 (and cases cited therein); In re Reading Co., 115 F.3d at 1121; United Techs., 33 F.3d at 99.  Thus, an action for contribution under section 113(f), not a cost recovery action under section 107, is the appropriate vehicle for a PRP seeking to recover from other PRPs.[27]

---

[27]  See also Bedford Affiliates v. Sills, 156 F.3d at 424 ("where multiple parties are responsible, joint and several liability attaches. Consequently, one potentially responsible person can never recover 100 percent of the response costs from others similarly situated since it is a joint tortfeasor-and not an innocent party-that ultimately must bear its pro rata share of cleanup costs under § 107(a).").

The Eighth and Second Circuits, by contrast, held that the appropriate remedy for certain claims between PRPs is an action for joint and several liability.[23]  "There is no statutory support for such a rule, which would immunize the claimant-PRP from the risk of orphan-share liability and would restrict substantially the ability of courts to apportion costs equitably pursuant to § 113(f)."  Pinal Creek, 118 F.3d at 1303.[24]  Moreover, Aviall does not cast any doubt on the well-established principles underlying Pinal Creek and the other courts of appeals decisions cited above.  Although Aviall resolved the question whether a PRP that incurs response costs without being sued or settling its liability may seek contribution under section 113(f)(1), it did nothing to change the fundamental assumption that underlies the courts of appeals cases:  that claims by private PRPs are necessarily actions for contribution which must be brought using the express limited mechanisms that Congress provided in section 113(f).  Not only did the Supreme Court in Aviall expressly decline to address the correctness of the then-unanimous decisions by ten courts of appeals that a PRP may not bring an action against another PRP solely under section 107(a)(4)(B), 543 U.S. at 169-70, nothing in the Court's analysis calls those decisions into question.

---

[23] Both courts (and Viacom) seem to presume that there must be a remedy of some form, so that if Aviall has eliminated contribution under the specific facts of a case, then the route of cost-recovery must be available.  This assumption is ill-founded; Congress does not have to provide a remedy in all circumstances.

[24] According to the Second Circuit, the defendants might be able to file a counterclaim for contribution to avoid paying all of the plaintiff PRP's necessary costs.  Consolidated Edison, 423 F.3d at 100 n.9.  The Court, however, expressed "no opinion as to the efficacy of such a procedure."  Id.  The Eighth Circuit also pointed to the potential for a counterclaim in contribution as a means of preventing a PRP from recovering 100 percent of its costs in an action against other PRPs under section 107(a).  ARC, 459 F.3d at 835.  However, as noted in Town of New Windsor v. Tesa Tuck, Inc., 919 F. Supp. 662, 681 (S.D.N.Y. 1996), this approach can result in "sequential, piecemeal litigation,"  resulting in "ancillary litigation and third-, fourth-, and fifth-party practice that typically bogs down CERCLA litigation."

**D.      CERCLA's Savings Clause Does Not Support the Argument that A PRP Can Assert A Claim Against Another PRP Under Section 107(a)**

The savings clause in section 113(f)(1) provides that "[n]othing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under [section 106 or section 107]."  As the Supreme Court explained,

> the sentence [i.e., the saving clause] rebuts any presumption that the express right of contribution provided by the enabling clause [in § 113(f)(1) ] is the exclusive cause of action for contribution available to a PRP.  The sentence, however, does not itself establish a cause of action; nor does it expand § 113(f)(1) to authorize contribution actions not brought "during or following" a § 106 or § 107(a) civil action; nor does it specify what causes of action for contribution, if any, exist outside § 113(f)(1).

Aviall, 543 U.S. at 166-67.  Thus, a PRP cannot rely on the savings clause to provide a cause of action, but instead must look elsewhere.  DuPont,  460 F.3d at 532.  The obvious function of the savings clause is to preserve the ability of a PRP to bring an action for contribution either under section 113(f)(3)(B), 460 F.3d at 532, or under any other provision of law beyond CERCLA, including state law, prior to the commencement of  a civil action under section 106 or section 107.  See, e.g., Atherton v. FDIC, 519 U.S. 213, 227-28 (1997) (savings clause that preserves rights "under other applicable law" is not limited to preserving rights under the same statute, but also saves rights provided by other state or federal law.).

That clause, however, saves only actions for "contribution" — and there is no reason to think that the savings clause uses the term "contribution" in anything other than its common-law sense.  See, e.g., Field v. Mans, 516 U.S. 59, 69 (1995) ("[w]here Congress uses terms that have accumulated settled meaning under . . .  the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.") (citations and internal punctuation omitted).  If the savings clause were read to apply even to

such cost-recovery actions (and assuming arguendo that section 107(a) initially permitted such actions), it would enable a PRP, notwithstanding the language of section 113(f)(1), to bring suit even before an action under section 106 or section 107(a) is commenced—in contravention of the rule that a savings clause should not be interpreted to nullify operative language in the same statute in which it is contained. See, e.g., AT&T Co. v. Central Office Tel., Inc., 524 U.S. 214, 227-28 (1998). Moreover, it would have been pointless for Congress to create an explicitly limited right to contribution under section 113(f) if, at the same time, the "savings" clause were intended to preserve a remedy under the same Act that would allow PRPs to bring a contribution action at any time, particularly since a remedy under section 107(a) would be much broader than that afforded by section 113(f).

> **E.     The Legislative History Does Not Support the Argument that A PRP Can Assert A Claim Against Another PRP Under Section 107(a)**

The Third Circuit has provided a comprehensive review of the legislative history of both CERCLA and SARA with respect to the question of whether a PRP engaged in a voluntary cleanup without settlement or suit is entitled to recover against other PRPs under CERCLA. DuPont, 460 F.3d at 533-39.   The court concluded that "[t]hough . . . the legislative history of CERCLA is rather unclear, particularly with respect to voluntary cleanups by PRPs, the legislative history of SARA uniformly indicates the intent of Congress to encourage settlement by, inter alia, authorizing an express and limited contribution right."  Id. at 534 n.23.

The legislative history of CERCLA (as opposed to SARA), shows that Congress rejected language that would have established an express cause of action for contribution among PRPs. Id.  Instead, Congress decided to allow common law principles to resolve liability issues not directly addresses by the statute.  The court summarized several statements by individual

members of Congress that the statute should include vigorous enforcement provisions to

encourage voluntary cleanups.  The court concluded, however, that

> [t]hese statements do not, however, establish that Congress necessarily intended
> that PRPs engaged in voluntary cleanups be able to seek contribution; they could
> just as easily reflect congressional recognition that a strong enforcement scheme
> holding wrongdoers liable would encourage PRPs to head off potentially ruinous
> litigation or punitive settlements and clean up their own mess.

Id. at 534.  The court observed that this deference to common law principles is inconsistent with

the claim that Congress intended to provide for contribution between joint-tort feasors "since

contribution among jointly and severally liable tortfeasors ordinarily follows a determination of

liability to a common plaintiff who suffered an injury."  Id. at 535.[25]

The legislative history for SARA is more relevant to the present question.  The House

Committee on Energy and Commerce stated that section 113 "clarifies and confirms the right of

a person held jointly and severally liable under CERCLA to seek contribution from other

potentially liable parties, when the person believes that it has assumed a share of the cleanup or

cost that may be greater than its equitable share under the circumstances."  H.R. Rep. No. 99-

253, pt.1, at 79 (1985), reprinted in 1986 U.S.C.C.A.N. 2835, 2861 (emphasis added).  Similarly,

the Senate Committee on Environment and Public Works explained that section 113 permits a

contribution action when a party believes it has "assumed a share of the cleanup or cost that may

be greater than its equitable share."  S. Rep. No. 99-11, at 44 (1985), reprinted in 2 A Legislative

History of the Superfund Amendments & Reauthorization Act of 1986 (Comm. Print 1990), at

636 ("Leg. History").

---

[25]  The common law principles of contribution are discussed further infra 34-35.

Consolidated Edison and ARC, as well as Viacom, relied on these statements in holding that Congress intended to provide (or preserve) a remedy for a PRP that did not meet the specific requirements of section 113(f) to recover against other PRPs. These courts, however, failed to recognize the significance of other statements in the legislative history. The more exhaustive analysis set forth by the Third Circuit in DuPont, 460 F.3d at 535-39, shows that Congress' goal was to secure negotiated cleanups under the government supervision and that Congress did not intend to encourage "a wholly voluntary, unsupervised, sua sponte cleanup operation." 460 F.3d at 537. "[T]he 'voluntary' nature of the cleanups Congress had in mind was a voluntary agreement to settle and enter into a consent decree." Id. Congress intended that the right to seek contribution and to secure contribution protection afforded by section 113(f) would be an incentive for parties to enter settlements to perform cleanups -- not to perform cleanups without supervision -- to ensure that proper measures were taken to ensure protection of human health and the environment. In reaching this conclusion, the court relied on excerpts from a number of committee reports, including:

- S. Rep. No. 99-11, at 65, 67, reprinted in 2 Leg. History at 657,659 (quoted at 460 F.3d at 534)

  the Administrative Conference believes that a properly designed site cleanup negotiation process, through which responsible parties or third parties would agree to act directly to clean up sites, would also hasten cleanup while reducing its expense by tapping the technical and financial resources of the private sector. Involvement of the federal government and affected citizens in this process would ensure adequate protection of public health and the environment.
  .  .  .

  The final agreement should take the form of an administrative consent order under section 106 of CERCLA or a judicial consent decree.

- H.R. Rep. No. 99-253, pt. 5, at 58 (1986), reprinted in 1986 U.S.C.C.A.N. 3124, 3181 (quoted at 460 F.3d at 536-37)

The Committee recognizes that Fund-financed cleanups, administrative action and litigation-even under a strong and vigorous enforcement program-will not be sufficient to accomplish CERCLA's goals. Voluntary cleanups are essential to a successful program for cleanup of the Nation's hazardous substance pollution problem. [SARA's settlement provisions are] intended to encourage and establish procedures and protections pertaining to negotiated private party cleanup of hazardous substances where such cleanup is in the public interest.

• H.R. Rep. No. 99-253, pt. 1, at 80, reprinted in 1986 U.S.C.C.A.N., at 2862; S. Rep. No. 99-11, at 44, reprinted in 2 Leg. History at 636(same) (quoted at 460 F.3d at 536-37)

Parties who settle for all or part of a cleanup or its costs, or who pay judgments as a result of litigation, can attempt to recover some portion of their expenses and obligations in contribution litigation from parties who were not sued in the enforcement action or who were not parties to the settlement. [Such] parties may be more willing to assume the financial responsibility for some or all of the cleanup [ i.e., through settlement] if they are assured that they can seek contribution from others.

• H.R. Rep. No. 99-253, pt. 1, at 58-59, reprinted in 1986 U.S.C.C.A.N., at 2840-41 (quoted at 460 F.3d at 537)

The settlement procedures now set forth are expected to be a significant inducement for parties to come forth, to settle, to avoid wasteful litigation and thus to begin cleanup.
. . .

The bill would give potentially responsible parties the explicit right to sue other liable or potentially liable parties who also may be responsible for the hazardous waste site. [Also,] [i]f a party has resolved its liability to the U.S. or a state in a judicially[ ] approved, good-faith settlement, the party would not be liable for claims for contribution or indemnity on matters addressed in the settlement. These provisions should encourage quicker, more equitable settlements, decrease litigation and thus facilitate cleanups.

These excerpts show that the legislative history does not support a claim that Congress intended to provide a remedy to parties such as plaintiffs who conducted their cleanup outside the context of a negotiated settlement. The validity of this conclusion is further emphasized by a statement from the House Committee on Energy and Commerce that section 113 "does not affect the right of the United States to maintain a cause of action for cost recovery under Section 107 or injunctive relief under Section 106, whether or not the U.S. was an owner or operator of a

facility or a generator of waste at the site." H.R. Rep. No. 99-253, pt. 1, at 79-80, reprinted in 1986 U.S.C.C.A.N. 2835, 2861-62 (emphasis added). The implication of this statement, and the reason the House Committee included it in the Report, is that generally parties who are PRPs are not entitled to maintain an "action for cost recovery under Section 107." The Committee needed to include this clarification to ensure that the United States would be able to perform its lead role in implementing CERCLA even when it is a PRP at a site.[26] If, as Plaintiffs assert, section 107(a) provided a cause of action for a PRP, this point would never have arisen.

**F.    Policy Concerns Do Not Warrant Allowing A PRP to Assert A Claim Under Section 107(a)**

The courts that have allowed PRPs to sue under section 107 have justified their decisions on policy grounds. ARC, 459 F.3d at 837; Consolidated Edison, 423 F.3d at 100; Viacom, 404 F. Supp. 2d at 8. As explained above, this concern for promoting voluntary unsupervised cleanup is not consistent with the statutory language. It is improper for a court to override the result dictated by statutory construction principles based on its own assessment of policy considerations. Moreover, "statutes are rarely, if ever, unidimensionally directed towards achieving or vindicating a single public policy." NRDC v. EPA, 822 F.2d 104, 113 (D.C. Cir. 1987). See also East Bay Mun. Utility Dist. v. United States Dep't of Commerce, 142 F.3d 479, 484 (D.C. Cir. 1998). Any attempt to resolve the statutory construction issue presented in this

---

[26] Consistent with this legislative history, courts have held that the United States, unlike a private PRP, is not limited to a claim in contribution when it is both a plaintiff and a PRP. See, e.g., United States v. Monsanto Co., 858 F.2d 160, 164 & n.2, 173 & n.28 (4th Cir. 1988); United States v. Chrysler Corp., 157 F. Supp. 2d 849, 858-59 (N.D. Ohio 2001); United States v. Kramer, 757 F. Supp. 397, 414 (D.N.J. 1991).

case on policy grounds would have to consider other goals of CERCLA that the interpretation of

section 107(a)(4)(B) by the Second Circuit and Eighth Circuits may frustrate.

As the Third Circuit acknowledged, "it could be that encouraging sua sponte voluntary

cleanups by capable PRPs is in the public's interest, and would be a better way to protect health

and the environment than pressuring them into settlement agreements." DuPont, 460 F.3d at

542.  The court reasoned, however, that "[t]his is not self-evident," and "the debate over whether

our national environmental cleanup laws should favor prompt and effective cleanups in any

manner . . .  or should favor settlements and other enforcement actions . . . is a matter for

Congress, not our Court." Id. at 543.

> **1.    Allowing PRPs to assert a claim under section 107(a) would damage CERCLA enforcement and undermine the Congressional policy favoring early settlement.**

The legislative history discussed above shows that encouraging PRPs promptly to settle

their liability with the United States or a State was an important Congressional goal.  See also

United States v. Charter Int'l Oil Co., 83 F.3d 510, 522 (1st Cir. 1996); United States v. Cannons

Eng'g Corp., 899 F.2d 79, 84 (1st Cir 1990); United States v. Akzo Coatings of America, Inc.,

949 F.2d 1409, 1436 (6th Cir. 1991).  Early settlement helps ensure prompt and effective

cleanups of sites contaminated by hazardous substances and provides a means of replenishing

the Superfund, which funds EPA cleanups.  EPA has long demonstrated its preference for

avoiding CERCLA litigation by entry into settlements.  See Interim CERCLA Settlement Policy,

50 Fed. Reg. 5034 (Feb. 5, 1985).  That preference was specifically endorsed by Congress in the

1986 amendments to CERCLA, which codified procedures for reaching settlements in CERCLA

section 122, 42 U.S.C. § 9622.  See H.R. Rep. No. 99-253, pt.1, at 101, reprinted in 1986

U.S.C.C.A.N. 2883 ("Negotiated private party actions are essential to an effective program for

cleanup of the nation's hazardous waste sites and it is the intent of this Committee to encourage

private party cleanup at all sites.").

CERCLA section 113(f)(2) and 113(f)(3)(B) support the policy favoring early settlement

of liability by providing PRPs with contribution protection and the right to bring contribution

claims against other PRPs if they resolve their liability to the United States or a state in an

administrative or judicially approved settlement.  See supra 26-29.  It is for the very reason of

providing a strong incentive for PRPs to settle their liability that Congress conditioned the

federal right to contribution on PRPs settling their liability unless they have been subject to an

action under section 106 or 107(a).  Id.  As the Third Circuit explained in In re Reading Co., 115

F.3d at 1119:

> PRPs, who choose to settle, gain protection from contribution, enjoy potentially
> favorable settlement terms, and retain the ability to seek contribution from other
> defendants.  PRPs, who choose not to settle, are barred from seeking contribution
> from the settling PRPs and thus face potentially disproportionate liability.  This
> system gives the United States obvious and important leverage to encourage
> quick and effective resolution of environmental disputes.

If the Court were to accept the contention that a contribution claim may be brought under

section 107(a)(4)(B) without complying with the conditions of section 113(f), PRPs seemingly

could bring contribution claims without resolving their liability to the United States or a state in

an administrative or judicially approved settlement.  Under this view, a PRP that has not been

sued under section 106 or 107 would be better off not settling its liability with EPA or a State  –

and thereby frustrating the Congressional policy to promote early settlement – so that it could

claim to be a "volunteer" and sue under the "substantially more generous provisions of §

107(a)."  See Bedford Affiliates, 156 F.3d at 424.  Moreover, under the statutory interpretation

adopted by Consolidated Edison, if one of several PRPs at a site refuses to settle, the remaining

PRPs might be given a disincentive to settle with EPA or a State because the contribution

protection provided by such a settlement or consent decree would not prevent the non-settling

PRP from suing them under section 107(a).  Town of New Windsor v. Tesa Tuck, Inc., 919 F.

Supp. 662, 681 (S.D.N.Y. 1996) (if a PRP could sue under 107(a), "§ 113(f)'s contribution bar

would be rendered meaningless because § 113(f)(2) provides contribution protection only

against claims for contribution.").

> **2.      Considerations unique to claims against the United States should not be considered in construing a statute that also applies to private parties.**

The Eighth Circuit also cited an additional policy concern applicable where, as here, the

United States is also an alleged PRP, theorizing "the government could insulate itself from

responsibility for its own pollution by simply declining to bring a CERCLA cleanup action or

refusing a liable party's offer to settle."  ARC, 459 F.3d at 837.  See also Viacom, 404 F. Supp.

2d at 8.  The court concluded that this possibility justifies allowing a PRP to bring independent

claims under section 107(a)(4)(B) to ensure that the government will be held liable at CERCLA

sites.  This argument is legally flawed and factually baseless.

A suit seeking recovery of money in contribution against the United States is against the

federal sovereign and cannot be maintained without an express and unambiguous waiver of

immunity from Congress.  Lane v. Pena, 518 U.S. 187, 192 (1996).  See also United States Dep't

of Energy v. Ohio, 503 U.S. 607, 615 (1992) (a waiver of sovereign immunity must be construed

strictly in favor of the sovereign and not enlarged beyond what the language requires).  Policy

considerations, such as that addressed in ARC, cannot serve to enlarge a waiver beyond its plain

terms.  See Library of Congress v. Shaw, 478 U.S. 310, 321 (1986).

By its terms, the waiver of sovereign immunity in CERCLA section 120(a)(1) is limited to procedural and substantive requirements that apply to nongovernmental entities and are imposed by the statute. 42 U.S.C. § 9620(a)(1) (federal agencies "shall be subject to, and comply with, this chapter in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity"). See East Bay Mun. Utility Dist., 142 F.3d at 481 ("We hold that the waiver of immunity contained in § 9620(a)(1) is coextensive with the scope of the substantive liability standards of CERCLA."). Therefore, any concerns unique to litigation against the United States, as opposed to a private party, are not germane to the proper interpretation of either section 107(a) or 113(f).

As a factual matter, the United States has frequently brought suit under CERCLA concerning sites where federal agencies are potentially liable for a substantial share of the cleanup costs. E.g., United States v. Shell Oil Co., 294 F.3d 1045 (9th Cir. 2002); United States v. Vertac Chem. Corp., 46 F.3d 803 (8th Cir. 1995); Coeur D'Alene Tribe v. Asarco Inc., 280 F. Supp. 2d 1094 (D. Idaho 2003); United States v. Hooker Chems. & Plastics Corp., 850 F. Supp. 993, 998 n.2 (W.D.N.Y. 1994). In such cases, private PRPs have sought contribution against the United States under section 113(f)(1). These cases involve sites with substantial cleanup costs, leaving no realistic doubt that the United States will also file suit when necessary concerning other sites.[27] Federal PRPs are also frequently parties to judicial or administrative settlements calling for large federal payments.

---

[27] In DuPont, the court noted that the United States had filed a section 107(a) action against DuPont regarding contamination at the Necco Park facility in Niagara, New York. 460 F.3d at 544 n.33. Because the United States agreed that it was subject to a suit for contribution with for costs incurred at Necco Park, the court converted the district court's order of dismissal with prejudice to a dismissal without prejudice with for the Necco Park claim. Id.

Moreover, CERCLA places cleanup responsibilities directly on federal agencies for the facilities that they currently own or operate.  42 U.S.C. § 9620(e).  See also 10 U.S.C. §§ 2701-2710 (Department of Defense Environmental Restoration Program).  These cleanup requirements do not depend upon federal enforcement under section 107(a).  Id.  In addition, a contribution claim may be triggered by a civil action initiated by, or a settlement with, a state.  42 U.S.C. § 9613(f)(1), (f)(3)(B).  Finally, CERCLA contains a limited waiver under section 120(a)(4) for application of certain state laws at currently owned or operated federal facilities.  42 U.S.C. § 9620(a)(4).  Therefore, neither enforcement against federal agencies nor the availability of contribution to PRPs is dependent on federal enforcement.

## III.    PLAINTIFFS CANNOT ASSERT AN IMPLIED CONTRIBUTION CLAIM UNDER CERCLA SECTION 107(a)

ARC includes an alternate holding that section 107 more generally contains an implied right to contribution.  ARC, 459 F.3d at 835.[29]  Even if an implied right to contribution did exist, however, it would not help Plaintiffs because section 107 would at most contain an implied right to "contribution" in its "traditional sense:"  i.e., a claim by one party to recover an amount from a jointly liable party after the party has extinguished a disproportionate share of their common liability to a third party.  United Technologies, 33 F.3d at 99; see, e.g., Northwest Airlines, 451 U.S. at 87-88 ("Typically, a right to contribution is recognized when two or more persons are liable to the same plaintiff for the same injury and one of the joint tortfeasors has paid more than his fair share of the common liability."); Black's Law Dictionary 297 (5th ed. 1979) ("Under

---

[29]  In Viacom, the Court stated that the Supreme Court had "identified" an implied cause of action under section 107(a).  404 F. Supp. 2d at 7 (citing Key Tronic Corp., 511 U.S. at 818).  The Aviall Court, however, held that this statement was dicta and deferred a decision on whether such a cause of action existed to a future case.  543 U.S. at 162.

principle of 'contribution,' a tortfeasor against whom a judgment is rendered is entitled to recover proportional shares of judgment from other joint tort-feasors whose negligence contributed to the injury and who were also liable to the plaintiff."). In this case, Plaintiffs are not seeking "contribution" as that term is traditionally defined, but are instead seeking to recover costs from a voluntary cleanup. Nothing in any provision of Section 107 suggests an implied right to "contribution" in such a broader and all-encompassing sense.[29]

In any event, there is no basis for a conclusion that an implied right to contribution under CERCLA exists.[30] Aviall declined to reach the issue, but did observe that

> [t]o the extent that Aviall chooses to frame its § 107 claim on remand as an implied right of contribution (as opposed to a right of cost recovery), . . . we note that this Court has visited the subject of implied rights of contribution before. Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 638-647 (1981); Northwest Airlines, Inc. v. Transport Workers Union, 451 U.S. 77, 90-99 (1981).

543 U.S. at 170-71. In both Texas Indus. and Northwest Airlines the Supreme Court determined that, because the statutes in question did not create an express right to contribution, if any right to contribution existed under either statute, it had to exist through federal common law. Texas Indus., 451 U.S. at 639-40; Northwest Airlines, 451 U.S. at 90-91. In both cases, however, the Supreme Court declined to find that federal common law had created an implied right of contribution under the statutes in question. Texas Indus., 451 U.S. at 646 ("We are satisfied that neither the Sherman Act nor the Clayton Act confers on federal courts the broad power to

---

[29] Traditionally, one who makes a voluntary payment cannot seek reimbursement from others by way of contribution. Restatement (Second) of Torts § 886A, cmt. e (1979) (equity rule provides that contribution "will not be allowed in favor of a volunteer").

[30] "The norm in federal litigation is no contribution at all. The common law rule of joint and several liability permits victims to collect their whole loss from the wrongdoer of their choice, or in such proportions as they please from multiple offenders." Akzo Coatings, Inc., 30 F.3d at 772-73 (Easterbrook, J., concurring in part and dissenting in part).

formulate the right to contribution here."); <u>Northwest Airlines</u>, 451 U.S. at 91, 94-95 ("[W]e

have been unable to discover any manifestation of an intent on the part of Congress to create a

right to contribution in favor of employers under the Equal Pay Act and Title VII.  Accordingly

we hold that there is no implied right to contribution under those statutes"); <u>see</u> <u>also</u>, <u>e.g.</u>,

<u>Alexander v. Sandoval</u>, 532 U.S. 275, 287-88 (2001); <u>Correctional Servs. Corp. v. Malesko</u>, 534

U.S. 61, 67 & n.3 (2001); <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 283-84 (2002).

In addition, the Supreme Court's principles of statutory construction also compel the

conclusion that CERCLA Section 107(a)(4)(B) cannot serve as the basis for an implied right of

contribution.  "It is an elemental canon of statutory construction that where a statute expressly

provides a particular remedy or remedies, a court must be chary of reading others into it."

<u>Transamerica Mortgage Advisors, Inc. v. Lewis</u>, 444 U.S. 11, 19 (1979); <u>accord</u> <u>Meghrig v. KFC</u>

<u>Western, Inc.</u>, 516 U.S. 479, 488 (1996).  The Supreme Court has "explained [that] where

Congress has provided 'elaborate enforcement provisions' for remedying the violation of a

federal statute, as Congress has done with . . . CERCLA, 'it cannot be assumed that Congress

intended to authorize by implication additional judicial remedies for private citizens suing under'

the statute."[31] <u>Meghrig</u>, 516 U.S. at 487-88 (citing <u>Middlesex County Sewerage Auth. v.</u>

<u>National Sea Clammers Ass'n</u>, 453 U.S. 1, 14 (1981)).  <u>See</u> <u>also</u>, <u>e.g.</u>, <u>Alexander v. Sandoval</u>,

---

[31]  The instances in which courts may formulate federal common law are "few and restricted."
<u>Texas Indus.</u>, 451 U.S. at 640 (citations omitted).  The power to create federal common law does
not authorize a court to substitute its views for those expressed by Congress in a duly enacted
statute.  <u>Mobil Oil Corp. v. Higginbotham</u>, 436 U.S. 618, 625 (1978).  "There is a basic
difference between filling a gap left by Congress' silence and rewriting rules that Congress has
affirmatively and specifically enacted."  <u>Id</u>.  "[W]hen Congress has legislated on a question that
is claimed to be appropriate for the creation of federal common law, courts must assume that
Congress has articulated all the governing federal standards."  <u>Ridenour v. Andrews Federal</u>
<u>Credit Union</u>, 897 F.2d 715, 722 (4th Cir. 1990).

532 U.S. at 290 ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.").  Thus, because Congress expressly authorized private citizens to bring contribution actions when it enacted section 113(f) (including its express limitations), it would be inappropriate to read an implied right of contribution into section 107(a)(4)(B).

Additionally, to find an right of contribution in the absence of a section 106 or 107 civil action or settlement would render section 113(f)(1) and section113(f)(3)(B) unnecessary and superfluous.  See Hohn v. United States, 524 U.S. 236, 249 (1998) ("We are reluctant to adopt a construction making another statutory provision superfluous.").  Such a finding would also produce the absurd result that Congress expressly designated two avenues by which a liable party may seek contribution for cleanup costs under Section 113(f), while at the same time allowing a contribution claim to be brought under section 107 when the preconditions for those avenues are not satisfied.  As the Supreme Court stated in Aviall:  "There is no reason why Congress would bother to specify conditions under which a person may bring a contribution claim, and at the same time allow contribution actions absent those conditions." 453 U.S. at 166.

Finally, implying a statutory right against the United States in 107(a) contravenes principles of construction concerning sovereign immunity.  A suit seeking recovery of money in contribution against the United States is against the federal sovereign and cannot be maintained without an express and unambiguous waiver of immunity from Congress.  Lane v. Pena, 518 U.S. at 192.  By its terms, the waiver of sovereign immunity in CERCLA section 120(a) is limited to procedural and substantive requirements imposed by CERCLA.  42 U.S.C. § 9620(a) (1) (federal agencies "shall be subject to, and comply with, this chapter in the same manner and to the same extent, both procedurally and substantively, as any non-governmental entity").  To

37

imply a right a contribution against the United States where the statute does not expressly

provide one would broaden the waiver of sovereign immunity in the absence of express

Congressional intent.

## IV. PLAINTIFFS FAIL TO ESTABLISH JURISDICTION FOR THE CLAIM UNDER THE DECLARATORY JUDGMENT ACT

Plaintiffs ask the Court for a declaratory judgment, pursuant to the Declaratory Judgment

Act, 28 U.S.C. §§ 2201-2202, that the United States is liable for response costs incurred at the

Great Neck Site.  Plaintiffs bear the burden of establishing the Court's jurisdiction over this

claim, Kokkonen v. Guardian Life Ins. Co., 511 U.S. at 377, but they fail to identify any

statutory basis for jurisdiction or an applicable waiver of sovereign immunity.

Plaintiffs' citation of the Declaratory Judgment Act does not meet the burden set by

Kokkonen.  The Act does not provide this Court with jurisdiction.  "'(T)he operation of the

Declaratory Judgment Act is procedural only.'"  Skelly Oil Co. v. Phillips Petroleum Co., 339

U.S. 667, 671 (1950) (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240 (1937)).  See

also Schilling v. Rogers, 363 U.S. 666, 677 (1960) ("the Declaratory Judgments Act is not an

independent source of federal jurisdiction; the availability of such relief presupposes the

existence of a judicially remediable right.") (internal citation omitted).  Moreover, the Act is not

a waiver of sovereign immunity.  Benvenuti v. Dep't of Defense, 587 F. Supp. 348, 352 (D.D.C.

1984).

Accordingly, Plaintiffs have failed to establish that the Court has jurisdiction over their

claim under the Declaratory Judgment Act.  The claim should be dismissed pursuant to Fed. R.

Civ. P. 12(b)(1).

## CONCLUSION

The CERCLA claims in the complaint should be dismissed for failing to state a claim upon which relief can be granted.  The claim pursuant to the Declaratory Judgment Act should be dismissed for lack of jurisdiction.

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
ASSISTANT ATTORNEY GENERAL

/s/ EILEEN T. MCDONOUGH
Environmental Defense Section
United States Department of Justice
Post Office Box 23986
Washington, D.C.  20026-3986
telephone: (202) 514-3126
telefax: (202) 514-8865
eileen.mcdonough@usdoj.gov

November 6, 2006