## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| LOCKHEED MARTIN CORPORATION,     ) | |
| ) | |
| Plaintiff,     ) | Case No. 06-01438-RJL |
| ) | |
| v.     ) | |
| ) | |
| UNITED STATES OF AMERICA,     ) | |
| ) | |
| Defendant.     ) | |
| _____) | |

## THE UNITED STATES' REPLY MEMORANDUM
## IN SUPPORT OF MOTION TO DISMISS

On November 6, 2006, the United States moved to dismiss this matter. As explained in the United States' Memorandum in Support of Motion to Dismiss ("U.S. Memo"), Plaintiffs' claims pursuant to section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a), to recover response costs incurred in remediating a facility in Great Neck, New York ("Great Neck Site") should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief may be granted. Both plaintiffs, Lockheed Martin Corporation and Unisys Corporation, are potentially responsible parties ("PRPs"), and so cannot invoke the remedy afforded by section 107(a). See E.I. DuPont De Nemours and Co. v. United States, 460 F.3d 515, 528-29 (3d Cir. 2006). Plaintiffs' claim for declaratory relief under CERCLA section 113(g)(2), 42 U.S.C. § 9613(g)(2), should likewise be dismissed pursuant to Rule 12(b)(6). Finally, Plaintiffs' claim under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, should be dismissed because Plaintiffs have not established a jurisdictional basis for relief under this Act. See Fed. R. Civ. P. 12(b)(1).

In opposing this Motion, Plaintiffs first argue that Lockheed is entitled to seek relief under section 107(a) because it is not a PRP. Plaintiffs' Response to the United States' Motion to Dismiss (Nov. 17, 2006) ("Pltf. Resp.").[1] The Complaint, however, does not contain allegations necessary to support such a claim. Accordingly, this argument cannot be used to defeat the United States' Motion to Dismiss.

Plaintiffs also take issue with the United States' interpretation of the language of CERCLA section 107(a)(1), but these arguments do not withstand scrutiny. Plaintiffs focus primarily on arguments regarding policy and whether the statutory scheme established by Congress is adequate to fulfill Congress' goals. Such arguments are irrelevant. Disputes over policy goals and the efficacy of a statutory program must be addressed to Congress, not the federal courts. Because section 107(a) does not plainly authorize the remedy sought by Plaintiffs, their CERCLA claims must be dismissed.

Finally, Plaintiffs claim that CERCLA provides the necessary jurisdictional basis, including a waiver of sovereign immunity, for their claim under the Declaratory Judgment Act. Because they do not have a valid CERCLA claim, however, they cannot rely on CERCLA as a jurisdictional foundation. Accordingly, this claim must be dismissed.[2]

---

[1]     Plaintiffs do not take issue with the United States' assertion that Unisys is a PRP.

[2]     Plaintiffs appear to agree that they cannot proceed under the Declaratory Judgment Act unless they can state a claim under CERCLA. Resp. at 34. The United States has addressed their CERCLA arguments extensively. Accordingly, there is no need for the United States to separately address issues pertaining to the Declaratory Judgment Act in this reply memorandum.

I.     **LOCKHEED CANNOT RELY ON ARGUMENTS UNSUPPORTED BY ALLEGATIONS IN THE COMPLAINT TO AVOID DISMISSAL FOR FAILURE TO STATE A CLAIM**

The Federal Rules of Civil Procedure require that Lockheed must "adequately allege all the elements necessary for any of the causes of action [it] invokes." Alicke v. MCI Commc'ns Corp., 111 F.3d 909, 912 (D.C. Cir. 1997). See also Kaempe v. Myers, 367 F.3d 958, 964 (D.C. Cir. 2004). While Plaintiffs are entitled "the benefit of all inferences that can be derived from the facts alleged," "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (internal citations omitted).[3/]

In response to the United States' Motion to Dismiss, Lockheed contends that it is entitled to pursue a claim under CERCLA section 107(a) because it is not a potentially responsible party ("PRP") as defined by that section. The federal courts have long recognized that parties not within the categories identified by section 107(a)(1)-(4), that have incurred response costs can seek recovery pursuant to section 107(a). See, e.g., New Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1120 (3d Cir. 1997). The four categories at issue are:

(1)     owners and operators of facilities at which hazardous substances are located;

(2)     past owners and operators of such facilities at the time hazardous substances were disposed of;

(3)     persons who arranged for disposal or treatment of hazardous substances; and

---

[3/]     See also Swierkiewicz v. Sorema N. A., 534 U.S. 506, 514 (2002) ("Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'") (internal citations omitted) (emphasis added).

(4)      certain transporters of hazardous substances to the site.

42 U.S.C. § 9607(a)(1)-(4).  At a minimum, before Lockheed can state a claim for relief based on the contention that it is outside all four of these categories, the Complaint must allege that the factual prerequisites for each category are not present.

Plaintiffs argue that the United States' Motion must be denied because "allegations cannot be read to suggest that Lockheed would be a PRP."  Resp. at 3.  See also id. at 4 ("the United States cannot prove, and the facts pled in the complaint do not show, that Lockheed Martin is a PRP.").  This argument does not accurately state the standard for review.  Plaintiffs cannot avoid dismissal of Lockheed's claims by asserting that the allegations in the Complaint are insufficient to show that Lockheed is a PRP.  Such a standard could allow a plaintiff to avoid dismissal simply by failing to include allegations necessary to the elements of its claim.  In order for Lockheed to state a claim that available only to non-PRPs, the Complaint must affirmatively alleges facts necessary to establish that element of its claim.[4]

### A.      Plaintiffs Failed to Adequately Allege That Lockheed Cannot Be Liable As An Owner or Operator.

Plaintiffs argue that the United States's assertion that Lockheed is a PRP under section 107(a)(1) is "contrary to the facts pled in the Complaint."  Resp. at 2.  The Complaint, ¶ 3, alleges that Lockheed acquired the Site in 1995, but  does not allege that Lockheed later sold the property.  Lockheed has now introduced a declaration and made a request that the Court take judicial notice of certain facts in order to defeat the United States' Motion to Dismiss.  Id. and

---

[4]      Plaintiffs make no allegations at all relevant to whether Lockheed could be liable under section 107(a)(3)-(4).  42 U.S.C. § 9607(a)(3)-(4).

Declaration of Peter E. Seley (Attachment 1 to Pltf. Resp.) ("Seley Decl.").[5]

      As an initial matter, the procedure used by Plaintiffs is improper; Plaintiffs should have amended the Complaint to remedy their failure to include any allegations regarding the sale, an event that they now purport to view as a key component of their claim. In practical terms, however, an amendment would be futile. Section 107(a)(1) can impose liability not just on the owner at the time a complaint is filed, see United States v. Fleet Factors Corp., 901 F.2d 1550, 1554 (11th Cir. 1990); United States v. JG-24, Inc., 331 F. Supp. 2d 14, 62 n.22 (D.P.R. 2004), but also, as is the case here, when the plaintiff has incurred response costs and its claim has accrued. Elementis Chems, Inc. v. T H Agric. and Nutrition, L.L.C., 373 F. Supp. 2d 257, 268-69 (S.D.N.Y. 2005).

      The Complaint alleges that the New York State Department of Environmental Conservation ("DEC") issued a Record of Decision requiring Lockheed and Unisys "to implement certain remedial activities at the Great Neck Site" in 1997. Complaint ¶ 32. Although Lockheed sold the Site several years later for $20.5 million, an exhibit to the Seley Declaration states that Lockheed retained responsibility for the environmental cleanup. New York Times (Apr. 2, 2000) (Exhibit 1 to Seley Decl). Furthermore, the Property Records available through Westlaw identify Lockheed as the lender for the sale of the Site. Attachment 1 hereto.

      Plaintiffs do not address the fact that Lockheed apparently retained responsibility for the environmental remediation. Under their argument, the mere fact of the sale would potentially allow Lockheed to hold both Unisys and the United States jointly and severally liable for all its

---

[5]     Lockheed also cites a three year-old letter to the former counsel for the United States stating that the sale had occurred. Pltf. Resp. at 1 n.1.

response costs.  Thus, Lockheed's unilateral action in selling the Site, even while retaining

responsibility for the environmental remediation, would greatly increase its recovery, which,

prior to the sale, would have been limited to a claim for contribution.  The statutory language

does not support such an arbitrary outcome.

Plaintiffs appear to recognize the potential for arbitrary outcomes if a plaintiff's status as

a PRP (or not) is examined only as of the filing of the complaint.  In arguing that the United

States' interpretation of section 107(a)(1) is illogical, Plaintiffs present the following

hypothetical:

> Under the government's reading, the current owner of the Great Neck facility, an
> innocent landowner with no connection whatsoever to the contamination at the
> property, would not be able to bring an action to recover any costs it spent to
> clean up because it is "the owner and operator of a vessel or a facility," and thus
> is a PRP under section 107(a)(1).  If that same innocent landowner sold the
> property tomorrow, under the government's interpretation of the statute, a cost
> recovery action would instantly become available to it because it would no longer
> be considered a PRP.

Pltf. Resp. at 13-14.  Plaintiffs assert that "CERCLA cannot be read to endorse that type of

arbitrariness through disparate treatment of similarly situated parties that have incurred response

costs."[6]  Id. at 14.

This concern about the possibility of arbitrary results if CERCLA status can be changed

by a property sale is resolved if the Court looks at the facts when the response costs at issue were

---

[6]      Plaintiffs' hypothetical is flawed by its overly-broad use of the term "innocent
landowner."  That term has been used to refer to owners that are not liable under CERCLA, such
as those that can assert one of the defenses enumerated in section 107(b), see Kerr-McGee
Chemical Corp. v. Lefton Iron & Metal Co., 14 F.3d 321, 325 (7th Cir. 1994), or an owner that is
outside the scope of the specific definition of "owner" in CERCLA section 101(20), 42 U.S.C. §
9601(2), which contains a number of qualifying terms; and owners that are otherwise expressly
excluded from liability by an exception under the statute.  Under the United States' interpretation
of section 107(a), such non-liable parties can assert claims for cost recovery.  U.S. Memo at 14-
15.

incurred, as well as when a complaint was filed.[7]  The question of when ownership is determined for the purpose of defining a plaintiff's status under CERCLA was considered in Elementis Chemicals, Inc. v. T H Agriculture and Nutrition, L.L.C., 373 F. Supp. 2d 257, 268-69 (S.D.N.Y. 2005).  Elementis Chemicals, Inc. ("ECI"), had incurred response costs at a facility it owned. ECI subsequently sold the facility and then filed a CERCLA suit against the previous owners in order to recover its costs.  In arguing that it was entitled to recover under section 107(a) of CERCLA, ECI relied on the fact that, as of the time when the complaint was filed, it was no longer the owner of the facility and so was not a PRP.  The court rejected this claim after concluding that ECI's status should be determined at the time its claim accrued, not at the time that ECI chose to file the complaint.  Because ECI was the owner when it incurred response costs at the facility, the court found that it was a PRP and so was limited to seeking contribution under CERCLA section 113.

> If ECI had filed suit to recover its cleanup costs at the time they were incurred,
> when it was still the owner of the facilities in question, it would clearly have been
> a PRP, and thus subject to the rule of Bedford Affiliates that in the absence of a
> § 107(b) affirmative defense it could not bring a § 107(a) action.  It would be
> quite odd if ECI could regain an otherwise unavailable cause of action, to recover
> costs that it had already incurred, simply by selling certain facilities after the fact
> (and selling them to a possibly related party known by a name that formerly
> referred to ECI, at that).  The more logical interpretation would seem to be that a
> party's status as a present owner and operator is determined at the time a claim
> accrues, when there is a release or threat of release and costs are incurred.  This
> interpretation also involves a more natural reading of the text of § 107(a):  that
> section refers to "the owner and operator of a . . . facility . . . from which there is
> a release, or a threatened release which causes the incurrence of response costs,"

_____

[7]     In New York v. Shore Realty Corp., 759 F.2d 1032, 1045 (2d Cir. 1985), the Second Circuit observed that "[i]It is quite clear that if the current owner of a site could avoid liability merely by having purchased the site after chemical dumping had ceased, waste sites certainly would be sold, following the cessation of dumping, to new owners who could avoid the liability otherwise required by CERCLA."

> 42 U.S.C. § 9607(a) (2004), not to the owner and operator of a facility at which
> there was an incurrence of response costs for which a suit has since been filed.

373 F. Supp. 2d at 268-69 (emphasis added) (citing AM Int'l, Inc. v. Int'l Forging Equip. Corp.,

982 F.2d 989, 997 (6th Cir. 1993) ( "Section 107(a) defines the following as liable parties: (1)

owners and operators of a facility at the time of its cleanup"); Alfred R. Light, CERCLA Law

and Procedure112 (1991) ("[Section 107(a)(1) ] is interpreted to bring within the class of

potentially liable persons any owner or operator of the . . . facility at the time of the cleanup");

       As noted by Elementis, 373 F. Supp. 2d at 268-69, the Eleventh Circuit has stated that

section 107(a)(1) refers to the owner at the time of filing of the complaint. Fleet Factors, 901

F.2d at 1554 ("we will construe the present owner and operator of a facility as that individual or

entity owning or operating the facility at the time the plaintiff initiated the lawsuit by filing a

complaint"), superseded on other grounds as stated in Monarch Tile, Inc. v. City of Florence,

212 F.3d 1219, 1221 n.2 (11th Cir. 2000) (addressing exemption for secured creditors). Like the

other cases cited in Elementis, however, Fleet Factors is not on point. It did not involve a claim

by a former owner to recover response costs incurred during its ownership period. Instead, the

decision turned on the interpretation of section 101(20)(A)(iii), which provides that, where a

state or local government has involuntarily acquired title to a facility, the owner, for CERCLA

purposes, is the person who owned the facility "immediately beforehand."

       In Fleet Factors, the United States sought to recover costs incurred in cleaning up the site

of a bankrupt textile company. Fleet had held a security interest in that company and had

participated in certain management decisions. The company went into bankruptcy in 1981. The

site was held by the bankruptcy trustee until 1987 when it was sold to the county government at

a tax foreclosure sale. The court rejected the United States' arguments that Fleet, rather than the

bankruptcy trustee, should be considered the owner after holding that "immediately beforehand" means without intervening ownership, operation, and control.[5/]

Thus, <u>Fleet Factors</u> does not shed much light on the question as to whether Lockheed can transform its status from that of a PRP to the equivalent of an innocent landowner simply by selling the Great Neck facility after incurring at least some of the costs it now seeks to recover from the United States. <u>Elementis</u>, which addresses the same facts as the present case, properly analyzed both the statutory language and the practical consequences in deciding that the status of a CERCLA plaintiff such as Lockheed should be defined at the time the cause of action accrues. Thus, if an entity is the owner of a facility at the time cleanup costs are incurred, it cannot divest itself of its CERCLA liability simply by selling the contaminated facility, especially where it retains responsibility for the remediation. Any interpretation that would allow a party to manipulate liability in this fashion must be rejected as unreasonable. <u>Cf. North Shore Gas Co. v. Salomon Inc.</u>, 152 F.3d 642, 653 (7th Cir. 1998) (in the context of legal successorship stating that "CERCLA [] generally prohibits a party from transferring away its direct liabilities").

### A. Plaintiffs Failed to Adequately Allege That There Was No Disposal of Hazardous Substances at the Site When Lockheed Was An Owner Or Operator.

In arguing that the Complaint does not allege that Lockheed could be a PRP under section under section 107(a)(2), Pltf. Resp. 2-4, Plaintiffs point to the allegation in the Complaint, ¶ 30, that TCE and PCE were used in manufacturing processes at the Site between 1942 and 1979. Given the broad definition of "disposal" under CERCLA, this allegation cannot

---

[5/]       <u>Fleet Factors</u> also found that Fleet's participation in the management of the business was sufficient to establish liability as an operator outside the scope of the statutory exemption for secured creditors. 901 F.2d at 1560. <u>See also</u> <u>United States v. JG-24, Inc.</u>, 331 F. Supp. 2d at 62 (finding JG-24 liable as owner at time of disposal).

be equated with an allegation that there was <u>no</u> disposal of hazardous substances during Lockheed's ownership.  Cessation of the manufacturing operations would not preclude a disposal within CERCLA's broad definition.  Even moving contaminated soil from one part of the Site to another can constitute the disposal of hazardous substances under CERCLA.  <u>See Redwing Carriers, Inc. v. Saraland Apartments</u>, 94 F.3d 1489, 1510-12 (11th Cir. 1996) ("definition of 'disposal' should be read broadly to include the subsequent movement and dispersal of hazardous substances within a facility").  <u>See also</u> <u>Nurad, Inc. v. William E. Hooper & Sons Co.</u>, 966 F.2d 837, 846 (4th Cir. 1992) (the plaintiff presented evidence showing that tanks had leaked while defendant owned site).

## II.    THE PLAIN LANGUAGE OF CERCLA SECTION 107(a) BARS PLAINTIFFS' CLAIMS

### A.    The United States' Interpretation of Section 107(a)(1) is Supported by the Statutory Language.

Section 107(a) states as follows:

(a) <u>Covered persons; scope; recoverable costs and damages; . . .</u>

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section--

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the

incurrence of response costs, of a hazardous substance,[9] shall be liable for--

> (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;
>
> (B) any other necessary costs of response incurred by <u>any other person</u> consistent with the national contingency plan;
>
> (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and
>
> (D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

42 U.S.C. § 9607(a) (emphasis added).

The Supreme Court has explained that "both 'other' and 'another' are just as likely to be words of differentiation as they are to be words of connection." <u>Jama v. Immigration and Customs Enforcement</u>, 543 U.S. 335, 342-343 & n.3 (2005). The issue before the Court is to determine the distinction that Congress intended to draw through this specific language. The United States maintains that the statute distinguishes between (1) a person that can recover "any other necessary costs of response incurred . . . consistent with the national contingency plan" and (2) the entities identified elsewhere in section 107(a)(1)-(4) – namely, the PRPs identified in section 107(a)(1)-(4), as well as "the United States Government or a State or an Indian tribe,"

---

[9] "Although '[t]he phrase 'from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance' is incorporated in and seems to flow as if it were a part only of subparagraph (4), it . . . also modifies subparagraphs (1)-(3) inclusive,' its placement at the end of subparagraph (4) apparently having been 'simply a printer's error.'" <u>Elementis Chems.</u>, 373 F. Supp. 2d at 264 (quoting <u>New York v. Shore Realty Corp.</u>, 759 F.2d at 1043 n.16).

which are identified in section 107(a)(4)(A).[10]

The United States' interpretation is the most consistent with the language and the principles of statutory construction. Section 107(a) is one long sentence divided into a series of clauses. The subjects of the sentence are the four categories of PRPs. Read as a whole, section 107(a) provides in substance that A, B, C, and D (the PRPs) shall be liable to E, F, and G (the United States, States, and Indian tribes) and to "any other person." Thus, the phrase "any other person" in section 107(a)(4)(B) distinguishes the persons to whom PRPs are liable not only from E, F, and G, but also from A, B, C, and D (the four categories of PRPs).

**B.    Lockheed's Reliance on the Rule of Last Antecedent Is Misplaced.**

Lockheed argues that the United States' interpretation of section 107(a) must be rejected as contrary to the rule of statutory construction referred to as "the grammatical 'rule of the last antecedent,' according to which a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." Jama v. Immigration and Customs Enforcement, 543 U.S. at 343 (citing Barnhart v. Thomas, 540 U.S. 20, 26 (2003)). See 2A N. Singer, Sutherland Statutory Construction § 47.33, at 369 (6th rev. ed. 2000) ("Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent."). The rule is inapplicable to the present case.

The phrase at issue, "any other person," is one of differentiation, not limitation or qualification. This fact is best demonstrated by comparing section 107(a)(1) to the statutes at issue in cases that have applied the rule. In Jama, the Court considered 8 U.S.C. § 1231(b)(2), a

---

[10]    An Indian tribe is not a "person" under CERCLA section 101(21), which defines "person" as "an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body." 42 U.S.C. § 9601(21).

statute defining the process by which the government should determine the country to which an

alien should be removed.[11/]   The Court addresses 8 U.S.C. § 1231(b)(2)(E), which states:

> If an alien is not removed to a country under the previous subparagraphs of this paragraph, the Attorney General shall remove the alien to any of the following countries:
>
> (i) The country from which the alien was admitted to the United States.
>
> (ii) The country in which is located the foreign port from which the alien left for the United States or for a foreign territory contiguous to the United States.
>
> (iii) A country in which the alien resided before the alien entered the country from which the alien entered the United States.
>
> (iv) The country in which the alien was born.
>
> (v) The country that had sovereignty over the alien's birthplace when the alien was born.
>
> (vi) The country in which the alien's birthplace is located when the alien is ordered removed.
>
> (vii) If impracticable, inadvisable, or impossible to remove the alien to each country described in a previous clause of this subparagraph, another country <u>whose government will accept the alien into that country</u>.

543 U.S. at 340 (emphasis added).  The Court held that, consistent with the rule of last

antecedent, the emphasized phrase in (vii) applied only to limit the other countries to which an

alien can be removed after the government has made a determination of impracticability.  543

U.S, at 343-44.  The Court declined to apply the acceptance requirement to the countries listed in

subparagraph 1231(b)(2)(E)(i)-(vi).  <u>Id</u>.  Thus, the phrase was a limitation on one category, not a

basis for distinguishing between the different categories.

Similarly, in <u>Barnhart v. Thomas</u>, the Court applied the rule to a provision of the Social

---

[11/]      The statute was subsequently amended.  For present purposes, all references are to the version considered by the Court in rendering its decision.

Security Act providing that a person is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering  his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  540 U.S. 23, 26 (2003) (emphasis in original).  The Court held that the emphasized phrase applied only to limit the immediate antecedent and did not extend to "previous work."  However, again, the rule was applied in the context of a limitation, not as a means of differentiating between the types of work addressed in the statute.  See FTC v. Mandel Bros., Inc., 359 U.S. 385, 389 (1959) (rejecting statutory interpretation that interpreted the phrase "'any other'" as rendering the relative clause ("'who is engaged in dealing commercially'") applicable to all the specifically listed categories, in favor of construction that applied limiting clause only to the last antecedent).[12]

In the alternative, even if the rule of last antecedent applies in analyzing language of differentiation, the rule should not be applied here.  The Court has explained that the this rule "is not an absolute and can assuredly be overcome by other indicia of meaning."  Barnhart, 540 U.S. at 26.  In Porto Rico Ry. Light & Power Co. v. Mor, 253 U.S. 345 (1920), the Court addressed a statute providing:

> Said District Court [of Porto Rico] shall have jurisdiction of all controversies where all of the parties on either side of the controversy are citizens or subjects of a foreign state or states, or citizens of a state, territory, or district of the United States not domiciled in Porto Rico, wherein the matter in dispute exceeds,

---

[12]    See also United States v. Pritchett,  470 F.2d 455, 458-59 (D.C. Cir. 1972) (applying rule of last antecedent to statute prohibiting the possession of concealed weapons, except by "marshals, sheriffs, prison or jail wardens, or their deputies, policemen or other duly appointed law-enforcement officers, or to members of the Army, Navy, or Marine Corps of the United States or of the National Guard or Organized Reserves when on duty."  The court held that the qualifier "when on duty" applied only to the last antecedent, the members of the named military units, and so the requirement did not apply to appellant, who was an off-duty deputy jail warden.

14

exclusive of interest or cost, the sum or value of $3,000.

Id. at 348 (emphasis added).  The Court explained that "[t]he precise question [] is whether the restriction of jurisdiction to cases where all the parties on either side of the controversy are 'not domiciled in Porto Rico' applies to aliens as well as to American citizens."  Id. at 346.  In holding that the restriction applied equally to all of the parties listed, the Court explained,

> No reason appears why the clause 'not domiciled in Porto Rico' should not be read as applying to the entire phrase 'citizens or subjects of a foreign state or states, or citizens of a state, territory, or district of the United States.'  When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all.  Furthermore, special reasons exist for so construing the clause in question.  The act manifests a general purpose to greatly curtail the jurisdiction of the District Court.  If the application of the clause were doubtful, we should so construe the provision as to effectuate the general purpose of Congress.  But it seems to us clear that it applies alike to aliens and to American citizens.

Id. at 348 (internal citations omitted) (emphasis added).  See also United States v. Bass, 404 U.S. 336, 337 (1971) (Where statute imposed criminal penalties upon any person who, "being an alien is illegally or unlawfully in the United States, and who receives, possesses, or transports in commerce or affecting commerce, . . . any firearm," Court held that emphasized phrase applied to all three antecedent verbs.) (emphasis added); League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Forsgren, 309 F.3d 1181, 1186 (9th Cir. 2002) (declining to follow last antecedent rule where statute makes more sense if the qualifying phrase applied to all preceding antecedents);[13] Shendock v. Dir., Office of Workers' Comp. Programs, 893 F.2d 1458,

---

[13]     The Ninth Circuit addressed a regulation providing:          "The term [point source] does not include non-point source silvicultural activities such as nursery operations, site preparation, reforestation and subsequent cultural treatment, thinning, prescribed burning, pest and fire control, harvesting operations, surface drainage, or road construction and maintenance from which there is natural runoff.  309 F.3d at 1186 (emphasis added).  The court concluded that "[w]e read the final modifying phrase, 'from which there is natural runoff,' to modify all the
                                                                                      (continued...)

1464 (3d Cir. 1990) ("[w]here the sense of the entire act requires that a qualifying word or phrase apply to several preceding or even succeeding sections, the word or phrase will not be restricted to its immediate antecedent.") (citing 2A N. Singer, Sutherland Statutory Construction § 47.33, at 245 (Sands 4th ed. 1984)); Pritchett, 470 F.2d at 459 ("This Rule of the Last Antecedent is not an inflexible rule, and is not applied where the context indicates otherwise.") (footnote omitted).

For the reasons, explained above, the interpretation proffered by the United States represents the most natural reading of section 107(a)(1) as a whole. Moreover, as explained in the United States Memo and below, it is the interpretation most consistent with CERCLA as a whole, particularly the provisions of section 113(f), 42 U.S.C. § 9613(f), and with the legislative history.

## III.    PLAINTIFFS ARE MISTAKEN IS SUGGESTING THAT AVIALL UNDERMINED THE PRIOR CASE LAW HOLDING THAT A RESPONSIBLE PARTY CAN SEEK RECOVERY

Plaintiffs suggest that the Supreme Court's decision in Cooper Indus. Inc. v. Aviall Servs., Inc., 543 U.S. 157 (2004) ("Aviall"), marked a fundamental shift in the judicial analysis of CERCLA. Pltf Resp. 5-8; see also Viacom, Inc. v. United States, 404 F. Supp. 2d 3, 7 (D.D.C. 2005). Aviall, however, expressly declined to consider the question at issue here – whether CERCLA section 107(a)(1) authorizes a cost recovery action by one PRP against another or if PRPs are limited to asserting claims in contribution pursuant to section 113(f). 543 U.S. at 170 ("leaving open whether [a PRP] may seek cost recovery under § 107"). Thus, Aviall does not affect the continued validity of the appellate decisions limiting PRPs to recovery in

---

13/(...continued)
listed activities in the sentence." Id.

contribution.  E.I. DuPont De Nemours and Co. v. United States, 460 F.3d at 528-29.  While

Plaintiffs maintain that the Aviall dissent is indicative as to how the Court will rule when it

squarely confronts this open question, their argument is only speculation.

      Plaintiffs' argument based on Key Tronic Corp. v. United States, 511 U.S. 809, 816

(1994), is even less convincing.  Key Tronic stated that section 107(a) "impliedly authorizes

private parties to recover cleanup costs from other [responsible parties]" and that the remedies of

section 107 and 113 are "somewhat overlapping."  Id. at 818.  Aviall, however, held that these

statements are dicta.  543 U.S. at 170.  As explained in Aviall, Key Tronic was limited to the

question of whether certain attorney's fees were "necessary costs of response" within the scope

of section107(a)(4)(B) and did not address the question of whether Key Tronic had a cause of

action against the United States.  543 U.S. at 170.[14]

      Finally, Plaintiffs cite to the plurality opinion by Justice Scalia in Pennsylvania v. Union

Gas Co., to support their argument.  491 U.S. 1 (1989) (overruled by Seminole Tribe of Fla. v.

Florida, 517 U.S. 44, 66 (1996)).  Once again, plaintiffs rely on language that is dicta.  The

question actually addressed by the Court was whether CERCLA abrogated the sovereign

immunity of the States under the Eleventh Amendment.  Id. at 6.  At no point did the Court

address the issue of whether a claim would be in contribution or an action for cost recovery.  In

fact, some of the specific language cited by Plaintiffs in support of their claim that Congress

intended to allow PRPs to recover under section 107(a)(1), is actually followed by a citation to

---

[14]     The underlying decision by the Ninth Circuit explains that the United States and Key
Tronic had entered into a consent decree that "resolved all the issues of Key Tronic's claims for
response costs from the Air Force except for the claim for attorneys' fees and prejudgment
interest."  Key Tronic Corp. v. United States, 984 F.2d 1025, 1027 (9th Cir. 1993).  Thus, issues
pertaining to the viability of Key Tronic's claim were moot.

section 113(f).  Union Gas Co., 491 U.S. at 21 ("The remedy that Congress felt it needed in

CERCLA is sweeping:  everyone who is potentially responsible for hazardous-waste

contamination may be forced to contribute to the costs of cleanup.  See, e.g., 42 U.S.C. §

9613(f)(1)") (emphasis added) (quoted (except for citation) in Pltf. Resp. at 16).

    In sum, Aviall expressly reserved the question at issue here.  Therefore, Plaintiffs'

arguments that Aviall undermines the continued validity of the cases limiting PRPs to claims for

contribution lack foundation.[15]

## IV.    PLAINTIFFS ARE MISTAKEN IN SUGGESTING RECOGNITION OF A COST RECOVERY ACTION BY PRPS WOULD NOT DEPRIVE THE EXPRESS REMEDY OF SECTION 113(f) OF SIGNIFICANCE

    Plaintiffs claim that Congress, in enacting SARA, intended to preserve a right to cost

recovery by PRP, as well as to provide an express remedy for contribution.[16]  This argument

ignores the reality that judicial recognition of a cost recovery claim would make the statutory

contribution remedy largely irrelevant.  If PRPs could choose between the two remedies, the

logical expectation is that most parties would seek the more generous relief afforded by section

---

[15]    Aviall did plainly establish that the cause of action allowed by section 113(f) was more
narrow than previously recognized by the lower courts, which had uniformly concluded that a
civil action under sections 106 or 107 was not a prerequisite for a contribution claim under
section 113(f)(1).  Plaintiffs appear to assume that when the Court narrowed one CERCLA
remedy, it intended that the scope of a second remedy must be construed more broadly.  This
assumption is unwarranted because Congress did not have to provide any remedies for PRPs
under CERCLA.

[16]    Plaintiffs contend that the savings clause in section 113(f)(1) demonstrates that Congress
intended to preserve a cost-recovery claim for PRPs.  This argument that is facially implausible;
the clause is expressly limited to actions for contribution.  42 U.S.C. § 9613(f)(1); U.S. Memo at
24-25.  Moreover, the fact that Congress expressly protected existing contribution actions --
without taking comparable action for any cost recovery action for PRPs -- actually undermines
Plaintiffs' argument that Congress intended to preserve any such claims.

107(a), and could thus circumvent the statutory restrictions included in section 113, such as a different statute of limitations.  U.S. Memo at 19.  Moreover, if a PRP could bring a section 107 action, it could seemingly circumvent section 113(f)(2), which provides protection against claims for contribution to parties that have resolved their liability to the United States or a State in an administrative or judicially approved settlement for matters addressed in the settlement.  U.S. Memo at 19-20.  The theory that Congress intended to ratify a judicially-recognized remedy that would negate the newly-adopted statutory provisions is not tenable.

Plaintiffs argue that recognition of a cost recovery action by PRPs who conduct "voluntary" cleanups would not undermine the viability of section 113(f) because the plaintiffs who can assert a claim for contribution under section 113(f) would be precluded from asserting a claim for cost recovery.  Pltf. Resp. at 25-26.  According to their theory, once a civil action under section 106 or 107 has been filed, the <u>only</u> remedy available to the PRPs named as defendants and subject to joint and several liability would be a "derivative right contribution action."  <u>Id</u>. at 25.  Plaintiffs would limit the right to bring "an original action," a claim for cost recovery under section 107(a), to PRPs that perform "voluntary" cleanups where no such civil action under sections 106 or 107 have been filed.  <u>Id</u>.

This argument is plainly wrong because nothing in section 113(f) provides that it is the <u>exclusive</u> remedy for a PRP sued under section 106 or 107.[17/]  Furthermore, Plaintiffs' contention that section 107(a)(4)(B) authorizes a cost recovery action by a private party is based on the assertion that the statutory phrase "any other party that has incurred response costs consistent

---

[17/]    Only the United States, the States, Indian tribes or private party that are not PRPs as defined by CERCLA can assert claims under section 107(a)(1).  U.S. Memo at 14-15.  On its face, CERCLA section 106(a), 42 U.S.C. § 9606(a), only authorizes actions by the United States.

with the NCP" means any party other than the United States, the States, or Indian tribes. Plaintiffs do not explain how a PRP that has incurred response costs during or after a civil action under section 106 or 107 would be excluded from its proffered definition of "any other person." Therefore, under Plaintiffs' definition, a PRP sued under sections 106 or 107 would be able to sue other PRPs under <u>either</u> section 113(f) <u>or</u> section 107(a)(1).

By choosing to assert a claim under section 107(a), one PRP suing another PRP would potentially be entitled to proceed on a theory of joint and several liability to recover all of its costs, <u>see</u> <u>Consolidated Edison Co. v. UGI Utils., Inc.</u>, 423 F.3d 90, 100 n.9 (2d Cir. 2005), <u>petition for cert. filed</u>, 74 U.S.L.W. 3600 (U.S. April 14, 2006) (No. 05-1323), thereby placing the burden on the other PRP to pursue (1) any defense of divisibility or (2) any counterclaim for contribution (or claims for contribution against any other available, non-settling PRPs) under section 113(f). Moreover, by filing an action under 107(a), the PRP seemingly would be able to circumvent any contribution protection that the other PRPs may have secured by resolving their liability to the United States as provided by CERCLA section 113(f)(2), since its claim would not be for contribution. <u>See</u> U.S. Memo at 19-20. Plaintiffs contend that such circumvention would be impossible, Resp. at 27 & n.18, but their assertion is based on their flawed assumption that a PRP sued under section 107 or 106 would be barred from asserting a cause of action under section 107(a).

## V. THE POLICY CONCERNS CITED BY PLAINTIFFS DO NOT SUPPORT THEIR INTERPRETATION OF CERCLA SECTION 107(a)

Plaintiffs contend that their interpretation of section 107(a) as allowing cost recovery actions by PRPs is necessary to effectuate Congress' intention to encourage "voluntary cleanups." As Plaintiffs and the United States have recognized, the legislative history does refer

to "voluntary cleanups." The history advanced by Plaintiffs, however, does not lend significant support to their claim that Congress was referring to cleanups without any involvement by EPA, as opposed to cleanups by parties pursuant to settlements with EPA. In fact, Plaintiffs cite a statement from Senator Domenici that identifies the purpose of SARA as "encourag[ing] private parties to come to the table and settle with EPA and get on with the business of cleaning up the sites. . . ." Pltf. Resp. at 19-20. Moreover, Plaintiffs have not shown that Congress intended to provide a disincentive for a party to enter into a settlement with EPA or a State by providing a more comprehensive remedy against other PRPs for PRPs that acted alone.

Given the clear meaning of the text of the statute, however, "there is no need . . . to consult the purpose of CERCLA at all." Aviall, 543 U.S. at 167. In any event, as the Third Circuit explained at length in DuPont, there is little evidence that, in enacting CERCLA and SARA, Congress intended to promote voluntary cleanups at the expense of government-supervised cleanups pursuant to settlement or suit—and, in fact, there is ample support for the contrary view.[18] See 460 F.3d at 533-543.

Plaintiffs further argue that the historical record supports their claim that Congress would seek to encourage cleanups without agency involvement because of problems with EPA's administration of the program in the years before CERCLA was adopted. Pltf. Resp. at 21-23. This argument is not relevant. Congress, not the federal courts, is responsible for the oversight

---

[18]     Plaintiffs describe Dupont's holding as "troubling" because this particular issue was not raised in the briefs. Resp. at 23. This is inconsistent with their heavy reliance on Consolidated Edison, 423 F.3d 90, and on Atlantic Research Corp. v. United States, 459 F.3d 827 (8th Cir. 2006) ("ARC"), petition for cert. filed, 75 USLW 3236 (Oct 24, 2006) (No. 06-562), which in turn relied heavily on Consolidated Edison. In Consolidated Edison, the entire issue of whether a PRP could assert a cost recovery claim was raised sua sponte by the Court. Id at 99. Plaintiff was arguing only for a contribution remedy.

21

of federal agencies.  The only question before the Court is to interpret the statute actually

adopted; there is no basis for the Court to address whether the amendments were intended to

specifically address shortcomings raised in the oversight process.  Moreover, this argument

assumes that  PRPs would do a better job of cleanups than would the Agency.  There is no basis

for this assumption.

Finally, Plaintiffs suggest that CERCLA ensured that cleanups conducted outside the

administrative process would be of an appropriate level by limiting recoverable costs to those

consistent with the NCP.  The suggestion that Congress would rely on possible financial

consequences that may not be identified for years to ensure the adequacy of a cleanup by an

party with financial liability for the site (and so a stake in ensuring the that costs are minimized)

is questionable.  Moreover, Plaintiffs rely on the NCP provision requiring that a cleanup must

"'result in a CERCLA-quality cleanup.'" Resp. at 20 (citing 40 C.F.R. § 300.700(b)(3)).  While

this provision is part of the NCP today, such language was not part of the NCP when Congress

enacted CERCLA in 1986.  See 50 Fed. Reg. 47,912, 47,977 (Nov. 20, 1985) (promulgating 40

C.F.R. § 300.71, the NCP provisions applicable to other party responses).

## VI.    PLAINTIFFS' ARGUMENTS BASED ON THE STATUS OF THE UNITED STATES AS A PRP ARE NOT RELEVANT

Plaintiffs claim that denying their argument for a cost recovery action would discourage

cleanups by decreasing the financial incentive for the United States to fund cleanups at sites

where federal agencies are PRPs.  Resp. at 29-31.  As the United States previously explained,

such an argument is not relevant because Congress has expressly limited the liability of the

United States to be coextensive with that of private parties.  See U.S. Mem. at 31-32 (citing

CERCLA section 120(a)).   By focusing on concerns unique to the role of the United States as

PRP, Plaintiffs are essentially arguing that the liability of private parties should be expanded in order to increase the liability of the United States.

In response, Plaintiffs contend that this argument "misses the point" because Plaintiffs claim is based on the plain language of section 107(a).  Resp. at 30.  Thus, Plaintiffs have effectively conceded that their arguments on this point are not relevant.

## VII.    PLAINTIFFS HAVE NOT SHOWN ANY BASIS FOR AN IMPLIED RIGHT OF CONTRIBUTION UNDER SECTION 107(a)

The United States previously explained why there is no basis for implying a right in contribution under CERCLA section 107(a), particularly in light of the fact that Congress has provided an express contribution provision.  U.S. Memo at 34-38.  Plaintiffs have responded by asserting that Congress intended to allow PRPs to sue other PRPs in an "original" action, which Plaintiffs define elsewhere as a cost recovery action.  Resp. at 32-33.  If this were true, it would obviate the need for an implied remedy because Plaintiffs would have an express remedy under section 107(a).  Because plaintiffs are misconstruing section 107(a), however, this argument cannot support a claim for an implied remedy in contribution that is broader than the remedy expressly provided in section 113(f).

Plaintiffs' claim that the savings clause in section 113 preserved the implied right of contribution that had been recognized by a number of federal courts prior to the enactment of section 113(f) is also unavailing.[19]  Plaintiffs provide no reason that Congress would intend to

---

[19]    Plaintiffs state that Aviall provides guidance on the issue of implied contribution   The Supreme Court in Aviall noted that decisions allowing contribution were "debatable in light of two decisions of this Court that refused to recognize implied or common-law rights to contribution in other federal statues."  543 U.S. at 162 (citing Texas Indust., Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 638-47 (1981)); Northwest Airlines, Inc. v. Transport Workers, 451 U.S. 77, 90-99 (1981)).

preserve a remedy implied by the courts while enacting an express remedy.  In fact, Congress's decision to provide an express statutory remedy is the strongest possible indication that Congress did not intend for the courts to imply a broader contribution right.  See U.S. Memo at 36-37. The savings clause is best construed as preserving contribution claims based on law other than CERCLA, such as state law or contract rights.  Id.

**CONCLUSION**

The CERCLA claims in the complaint should be dismissed for failing to state a claim upon which relief can be granted.  The claim pursuant to the Declaratory Judgment Act should be dismissed for lack of jurisdiction.

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
ASSISTANT ATTORNEY GENERAL

/s/ EILEEN T. MCDONOUGH
Environmental Defense Section
United States Department of Justice
Post Office Box 23986
Washington, D.C.  20026-3986
telephone: (202) 514-3126
telefax: (202) 514-8865
eileen.mcdonough@usdoj.gov

December 14, 2006