Cite as: 551 U. S. ____ (2007) 1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 06–562

UNITED STATES, PETITIONER *v.* ATLANTIC RESEARCH CORPORATION

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

[June 11, 2007]

JUSTICE THOMAS delivered the opinion of the Court.

Two provisions of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA)—§§107(a) and 113(f)—allow private parties to recover expenses associated with cleaning up contaminated sites. 42 U. S. C. §§9607(a), 9613(f). In this case, we must decide a question left open in *Cooper Industries, Inc.* v. *Aviall Services, Inc.*, 543 U. S. 157, 161 (2004): whether §107(a) provides so-called potentially responsible parties (PRPs), 42 U. S. C. §§9607(a)(1)–(4), with a cause of action to recover costs from other PRPs. We hold that it does.

I

A

Courts have frequently grappled with whether and how PRPs may recoup CERCLA-related costs from other PRPs. The questions lie at the intersection of two statutory provisions—CERCLA §§107(a) and 113(f). Section 107(a) defines four categories of PRPs, 94 Stat. 2781, 42 U. S. C. §§9607(a)(1)–(4), and makes them liable for, among other things:

2    UNITED STATES *v.* ATLANTIC RESEARCH CORP.

Opinion of the Court

> "(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan; [and]
>
> "(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan." §9607(a)(4)(A)–(B).

Enacted as part of the Superfund Amendments and Reauthorization Act of 1986 (SARA), 100 Stat. 1613, §113(f) authorizes one PRP to sue another for contribution in certain circumstances. 42 U. S. C. §9613(f).[1]

Prior to the advent of §113(f)'s express contribution right, some courts held that §107(a)(4)(B) provided a cause of action for a private party to recover voluntarily incurred response costs and to seek contribution after having been sued. See *Cooper Industries, supra*, at 161–162 (collecting cases); *Key Tronic Corp.* v. *United States*, 511 U. S. 809, 816, n. 7 (1994) same. After SARA's enactment, however, some Courts of Appeals believed it necessary to "direc[t] traffic between" §107(a) and §113(f). 459 F. 3d 827, 832 (CA8 2006) (case below). As a result, many Courts of Appeals held that §113(f) was the exclusive remedy for PRPs. See *Cooper Industries, supra*, at 169 (collecting cases). But as courts prevented PRPs from suing under §107(a), they expanded §113(f) to allow PRPs to seek "contribution" even in the absence of a suit under §106 or §107(a). *Aviall Servs., Inc.* v. *Cooper Industries, Inc.*, 312 F. 3d 677, 681 (CA5 2002) (en banc).

In *Cooper Industries*, we held that a private party could seek contribution from other liable parties only after having been sued under §106 or §107(a). 543 U. S., at 161.

---

[1] Section 113(f)(1) permits private parties to seek contribution during or following a civil action under §106 or §107(a). 42 U. S. C. §9613(f)(1). Section 113(f)(3)(B) permits private parties to seek contribution after they have settled their liability with the Government. §9613(f)(3)(B).

Cite as: 551 U. S. ____ (2007)           3

Opinion of the Court

This narrower interpretation of §113(f) caused several Courts of Appeals to reconsider whether PRPs have rights under §107(a)(4)(B), an issue we declined to address in *Cooper Industries*. *Id.*, at 168. After revisiting the issue, some courts have permitted §107(a) actions by PRPs. See *Consolidated Edison Co. of N. Y.* v. *UGI Utilities, Inc.*, 423 F. 3d 90 (CA2 2005); *Metropolitan Water Reclamation Dist. of Greater Chicago* v. *North American Galvanizing & Coatings, Inc.*, 473 F. 3d 824 (CA7 2007). However, at least one court continues to hold that §113(f) provides the exclusive cause of action available to PRPs. *E. I. Dupont de Nemours & Co.* v. *United States*, 460 F. 3d 515 (CA3 2006). Today, we resolve this issue.

B

In this case, respondent Atlantic Research leased property at the Shumaker Naval Ammunition Depot, a facility operated by the Department of Defense. At the site, Atlantic Research retrofitted rocket motors for petitioner United States. Using a high-pressure water spray, Atlantic Research removed pieces of propellant from the motors. It then burned the propellant pieces. Some of the resultant wastewater and burned fuel contaminated soil and groundwater at the site.

Atlantic Research cleaned the site at its own expense and then sought to recover some of its costs by suing the United States under both §107(a) and §113(f). After our decision in *Cooper Industries* foreclosed relief under §113(f), Atlantic Research amended its complaint to seek relief under §107(a) and federal common law. The United States moved to dismiss, arguing that §107(a) does not allow PRPs (such as Atlantic Research) to recover costs. The District Court granted the motion to dismiss, relying on a case decided prior to our decision in *Cooper Industries*, *Dico, Inc.* v. *Amoco Oil Co.*, 340 F. 3d 525 (CA8 2003).

4         UNITED STATES *v.* ATLANTIC RESEARCH CORP.

Opinion of the Court

The Court of Appeals for the Eighth Circuit reversed. Recognizing that *Cooper Industries* undermined the reasoning of its prior precedent, 459 F. 3d, at 830, n. 4, the Court of Appeals joined the Second and Seventh Circuits in holding that §113(f) does not provide "the exclusive route by which [PRPs] may recover cleanup costs." *Id.,* at 834 (citing *Consolidated Edison Co., supra*). The court reasoned that §107(a)(4)(B) authorized suit by any person other than the persons permitted to sue under §107(a)(4)(A). 459 F. 3d, at 835. Accordingly, it held that §107(a)(4)(B) provides a cause of action to Atlantic Research. To prevent perceived conflict between §107(a)(4)(B) and §113(f)(1), the Court of Appeals reasoned that PRPs that "have been subject to §§106 or 107 enforcement actions are still required to use §113, thereby ensuring its continued vitality." *Id.,* at 836–837. We granted certiorari, 549 U. S. ___ (2007), and now affirm.

II
A

The parties' dispute centers on what "other person[s]" may sue under §107(a)(4)(B). The Government argues that "any other person" refers to any person not identified as a PRP in §§107(a)(1)–(4).[2] In other words, subpara-

---

[2] CERCLA §107(a) lists four broad categories of persons as PRPs, by definition liable to other persons for various costs:

"(1) the owner and operator of a vessel or a facility,

"(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

"(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

"(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or

Cite as: 551 U. S. ____ (2007)           5

Opinion of the Court

graph (B) permits suit only by non-PRPs and thus bars Atlantic Research's claim. Atlantic Research counters that subparagraph (B) takes its cue from subparagraph (A), not the earlier paragraph (1)–(4). In accord with the Court of Appeals, Atlantic Research believes that subparagraph (B) provides a cause of action to anyone except the United States, a State, or an Indian tribe—the persons listed in subparagraph (A). We agree with Atlantic Research.

Statutes must "be read as a whole." *King* v. *St. Vincent's Hospital*, 502 U. S. 215, 221 (1991). Applying that maxim, the language of suparagraph (B) can be understood only with reference to subparagraph (A). The provisions are adjacent and have remarkably similar structures. Each concerns certain costs that have been incurred by certain entities and that bear a specified relationship to the national contingency plan.[3] Bolstering the structural link, the text also denotes a relationship between the two provisions. By using the phrase "other necessary costs," subparagraph (B) refers to and differentiates the relevant costs from those listed in subparagraph (A).

In light of the relationship between the subparagraph, it is natural to read the phrase "any other person" by referring to the immediately preceding subparagraph (A), which permits suit only by the United States, a State, or an Indian tribe. The phrase "any other person" therefore

---

sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for [various costs]." 42 U. S. C. §§9607(a)(1)–(4).

[3] "The national contingency plan specifies procedures for preparing and responding to contaminations and was promulgated by the Environmental Protection Agency . . . ." *Cooper Industries Inc.* v. *Aviall Services, Inc.,* 543 U. S. 157, 161, n. 2 (2004) (citing 40 CFR pt. 300 (2004)).

6          UNITED STATES *v.* ATLANTIC RESEARCH CORP.

Opinion of the Court

means any person other than those three. See 42 U. S. C. §9601(21) (defining "person" to include the United States and the various States). Consequently, the plain language of subparagraph (B) authorizes cost-recovery actions by any private party, including PRPs. See *Key Tronic*, 511 U. S., at 818 (stating in dictum that §107 "impliedly authorizes private parties to recover cleanup costs from *other* PRP[s]" (emphasis added)).

The Government's interpretation makes little textual sense. In subparagraph (B), the phrase "any other necessary costs" and the phrase "any other person" both refer to antecedents—"costs" and "person[s]"—located in some previous statutory provision. Although "any other necessary costs" clearly references the costs in subparagraph (A), the Government would inexplicably interpret "any other person" to refer not to the persons listed in subparagraph (A) but to the persons listed as PRPs in paragraphs (1)–(4). Nothing in the text of §107(a)(4)(B) suggests an intent to refer to antecedents located in two different statutory provisions. Reading the statute in the manner suggested by the Government would destroy the symmetry of §§107(a)(4)(A) and (B) and render subparagraph (B) internally confusing.

Moreover, the statute defines PRPs so broadly as to sweep in virtually all persons likely to incur cleanup costs. Hence, if PRPs do not qualify as "any other person" for purposes of §107(a)(4)(B), it is unclear what private party would. The Government posits that §107(a)(4)(B) authorizes relief for "innocent" private parties—for instance, a landowner whose land has been contaminated by another. But even parties not responsible for contamination may fall within the broad definitions of PRPs in §§107(a)(1)–(4). See 42 U. S. C. §9607(a)(1) (listing "the owner and operator of a . . . facility" as a PRP); see also *United States* v. *Alcan Aluminum Corp.*, 315 F. 3d 179, 184 (CA2 2003) ("CERCLA §9607 is a strict liability statute"). The Gov-

Cite as: 551 U. S. ____ (2007)           7

Opinion of the Court

ernment's reading of the text logically precludes all PRPs, innocent or not, from recovering cleanup costs. Accordingly, accepting the Government's interpretation would reduce the number of potential plaintiffs to almost zero, rendering §107(a)(4)(B) a dead letter.[4] See *Louisville & Nashville R. Co.* v. *Mottley*, 219 U. S. 467, 475 (1911) ("We must have regard to all the words used by Congress, and as far as possible give effect to them").

According to the Government, our interpretation suffers from the same infirmity because it causes the phrase "any other person" to duplicate work done by other text. In the Government's view, the phrase "any other necessary costs" "already precludes governmental entities from recovering under" §107(a)(4)(B). Brief for United States 20. Even assuming the Government is correct, it does not alter our conclusion. The phrase "any other person" performs a significant function simply by clarifying that subparagraph (B) excludes the persons enumerated in subparagraph (A). In any event, our hesitancy to construe statutes to render language superfluous does not require us to avoid surplusage at all costs. It is appropriate to tolerate a degree of surplusage rather than adopt a textually dubious construction that threatens to render the entire provision a nullity.

B

The Government also argues that our interpretation will create friction between §107(a) and §113(f), the very harm

---

[4] Congress amended the statute in 2002 to exempt some bona fide prospective purchasers (BFPPs) from liability under §107(a). See 42 U. S. C. §9607(r)(1) (2000 ed., Supp. IV). The Government claims that these persons are non-PRPs and therefore qualify as "any other person" under its interpretation of §107(a)(4)(B). Prior to 2002, however, the statute made this small set of persons liable as PRPs. Accordingly, even if BFPPs now give some life to the Government's interpretation of §107(a)(4)(B), it would be implausible at best to conclude that §107(a)(4)(B) lay dormant until the enactment of §107(r)(1) in 2002.

8        UNITED STATES *v.* ATLANTIC RESEARCH CORP.

Opinion of the Court

courts of appeals have previously tried to avoid. In particular, the Government maintains that our interpretation, by offering PRPs a choice between §107(a) and §113(f), effectively allows PRPs to circumvent §113(f)'s shorter statute of limitations. See 42 U. S. C. §§9613(g)(2)–(3). Furthermore, the Government argues, PRPs will eschew equitable apportionment under §113(f) in favor of joint and several liability under §107(a). Finally, the Government contends that our interpretation eviscerates the settlement bar set forth in §113(f)(2).

We have previously recognized that §§107(a) and 113(f) provide two "clearly distinct" remedies. *Cooper Industries*, 543 U. S., at 163, n. 3. "CERCLA provide[s] for a *right to cost recovery* in certain circumstances, §107(a), and *separate rights to contribution* in other circumstances, §§113(f)(1), 113(f)(3)(B)." *Id.*, at 163 (emphases added). The Government, however, uses the word "contribution" as if it were synonymous with any apportionment of expenses among PRPs. Brief for United States 33, n. 14 ("Contribution is merely a form of cost recovery, not a wholly independent type of relief"); see also, *e.g.*, *Pinal Creek Group* v. *Newmont Mining Corp.*, 118 F. 3d 1298, 1301 (CA9 1997) ("Because all PRPs are liable under the statute, a claim by one PRP against another PRP necessarily is for contribution"). This imprecise usage confuses the complementary yet distinct nature of the rights established in §§107(a) and 113(f).

Section 113(f) explicitly grants PRPs a right to contribution. Contribution is defined as the "tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault." Black's Law Dictionary 353 (8th ed. 1999). Nothing in §113(f) suggests that Congress used the term "contribution" in anything other than this traditional sense. The statute authorizes a PRP to seek contribution "during

Cite as: 551 U. S. ____ (2007)         9

Opinion of the Court

or following" a suit under §106 or §107(a). 42 U. S. C. §9613(f)(1).[5] Thus, §113(f)(1) permits suit before or after the establishment of common liability. In either case, a PRP's right to contribution under §113(f)(1) is contingent upon an inequitable distribution of common liability among liable parties.

By contrast, §107(a) permits recovery of cleanup costs but does not create a right to contribution. A private party may recover under §107(a) without any establishment of liability to a third party. Moreover, §107(a) permits a PRP to recover only the costs it has "incurred" in cleaning up a site. 42 U. S. C. §9607(a)(4)(B). When a party pays to satisfy a settlement agreement or a court judgment, it does not incur its own costs of response. Rather, it reimburses other parties for costs that those parties incurred.

Accordingly, the remedies available in §§107(a) and 113(f) complement each other by providing causes of action "to persons in different procedural circumstances." *Consolidated Edison*, 423 F. 3d, at 99; see also *E. I. Dupont de Nemours*, 460 F. 3d, at 548 (Sloviter, J., dissenting). Section 113(f)(1) authorizes a contribution action to PRPs with common liability stemming from an action instituted under §106 or §107(a). And §107(a) permits cost recovery (as distinct from contribution) by a private party that has itself incurred cleanup costs. Hence, a PRP that pays money to satisfy a settlement agreement or a court judgment may pursue §113(f) contribution. But by reimbursing response costs paid by other parties, the PRP has not incurred its own costs of response and therefore cannot recover under §107(a). As a result, though eligible

―――――――

[5] Similarly, §113(f)(3)(B) permits a PRP to seek contribution after it "has resolved its liability to the United States or a State . . . in an administrative or judicially approved settlement . . . ." 42 U. S. C. §9613(f)(3)(B).

10  UNITED STATES *v.* ATLANTIC RESEARCH CORP.

Opinion of the Court

to seek contribution under §113(f)(1), the PRP cannot simultaneously seek to recover the same expenses under §107(a). Thus, at least in the case of reimbursement, the PRP cannot choose the 6-year statute of limitations for cost-recovery actions over the shorter limitations period for §113(f) contribution claims.[6]

For similar reasons, a PRP could not avoid §113(f)'s equitable distribution of reimbursement costs among PRPs by instead choosing to impose joint and several liability on another PRP in an action under §107(a).[7] The choice of remedies simply does not exist. In any event, a defendant PRP in such a §107(a) suit could blunt any inequitable distribution of costs by filing a §113(f) counterclaim. 459 F. 3d, at 835; see also *Consolidated Edison, supra*, at 100, n. 9 (collecting cases). Resolution of a §113(f) counter-claim would necessitate the equitable apportionment of costs among the liable parties, including the PRP that filed the §107(a) action. 42 U. S. C. §9613(f)(a) ("In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appro-

---

[6] We do not suggest that §§107(a)(4)(B) and 113(f) have no overlap at all. *Key Tronic Corp.* v. *United States,* 511 U. S. 809, 816 (1994) (stating the statutes provide "similar and somewhat overlapping remed[ies]"). For instance, we recognize that a PRP may sustain expenses pursuant to a consent decree following a suit under §106 or §107(a). See, *e.g.*, *United Technologies Corp.* v. *Browning-Ferris Industries*, Inc., 33 F. 3d 96, 97 (CA1 1994). In such a case, the PRP does not incur costs voluntarily but does not reimburse the costs of another party. We do not decide whether these compelled costs of response are recoverable under §113(f), §107(a), or both. For our purposes, it suffices to demonstrate that costs incurred voluntarily are recoverable only by way of §107(a)(4)(B), and costs of reimbursement to another person pursuant to a legal judgment or settlement are recoverable only under §113(f). Thus, at a minimum, neither remedy swallows the other, contrary to the Government's argument.

[7] We assume without deciding that §107(a) provides for joint and several liability.

Cite as: 551 U. S. ____ (2007) 11

Opinion of the Court

priate").

Finally, permitting PRPs to seek recovery under §107(a) will not eviscerate the settlement bar set forth in §113(f)(2). That provision prohibits §113(f) contribution claims against "[a] person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement . . . ." 42 U. S. C. §9613(f)(2). The settlement bar does not by its terms protect against cost-recovery liability under §107(a). For several reasons, we doubt this supposed loophole would discourage settlement. First, as stated above, a defendant PRP may trigger equitable apportionment by filing a §113(f) counterclaim. A district court applying traditional rules of equity would undoubtedly consider any prior settlement as part of the liability calculus. Cf. Restatement (Second) of Torts §886A(2), p. 337 (1977) ("No tortfeasor can be required to make contribution beyond his own equitable share of the liability"). Second, the settlement bar continues to provide significant protection from contribution suits by PRPs that have inequitably reimbursed the costs incurred by another party. Third, settlement carries the inherent benefit of finally resolving liability as to the United States or a State.[8]

## III

Because the plain terms of §107(a)(4)(B) allow a PRP to recover costs from other PRPs, the statute provides Atlantic Research with a cause of action. We therefore affirm the judgment of the Court of Appeals.

*It is so ordered.*

---

[8] Because §107(a) expressly permits PRPs to seek cost recovery, we need not address the alternative holding of the Court of Appeals that §107(a) contains an additional implied right to contribution for PRPs who are not eligible for relief under §113(f). Cf. *Cooper Industries*, 543 U. S., at 171 (citing *Texas Industries, Inc.* v. *Radcliff Materials, Inc.*, 451 U. S. 630 (1981); *Northwest Airlines, Inc.* v. *Transport Workers*, 451 U. S. 77 (1981)).